[No. 51159-9-I. Division One. August 25, 2003.]

KING COUNTY DEPARTMENT OF COMMUNITY AND HUMAN SERVICES, *Respondent*, v. NORTHWEST DEFENDERS ASSOCIATION, ET AL., *Petitioners*.

*Deborah L. Carstens, Jerret E. Sale,* and *Pamela H. Salgado* (of *Bullivant Houser Bailey, P.C.*); and *Henry E. Farber* and *Jeffrey B. Youmans* (of *Davis Wright Tremaine, L.L.P.*), for petitioners.

*Sheryl D.J. Willert* and *Darren A. Feider* (of *Williams, Kastner & Gibbs, P.L.L.C.*), for respondent.

BECKER, C.J. — Here on discretionary review is a trial court order appointing a receiver for Northwest Defenders Association, a nonprofit corporation. The order empowers the receiver to remove and replace Northwest's board of directors and corporate management. We hold the receivership was appropriately ordered on two statutory grounds. By allowing its board of directors to become defunct, Northwest forfeited its corporate rights; and because receivership was preferable to shutting down the corporation and terminating services to its clients, receivership was necessary to secure ample justice between the parties.

The King County Office of Public Defense is a division of the King County Department of Community and Human Services. The Office of Public Defense negotiates and over-

sees contracts for indigent legal services with the Northwest Defenders Association and three other defender agencies. Northwest, like the other agencies, is a nonprofit corporation. Its annual budget exceeds $3 million. It employs between 40 and 50 people and handles in excess of 5,000 cases per year, subject to the provisions of a detailed contract with the County.

The most recent contract was from 2000 to 2001. When it expired, Northwest and the County extended their arrangement into 2002 through a statement of intent. In March 2002, the County audited Northwest for contract compliance.

The affairs of a nonprofit corporation must be managed by a board of directors. RCW 24.03.095. Northwest was required by contract to keep the County advised of the names and addresses of board members. The audit found that Northwest had not had an active board of directors since 1995. The most recently serving members of the board of directors had all resigned and had not been replaced. The audit identified this as a material breach of Northwest's contract with the County.

Without supervision by a board, the executive director had been able to run Northwest's affairs unchecked and unchallenged. The County took the view that the absence of a functioning board at least partially explained why Northwest had engaged in certain questionable activities criticized in the audit, including use of county funds to establish a for-profit law firm, and leasing more expensive office space without the County's approval.

Rufus McKee was Northwest's executive director from inception of the corporation in 1987 until his resignation in July 2002, when long-time deputy director LaMar Mills took over that position. McKee and Mills took a number of actions to address the problems identified by the audit, including the recruitment of a new board. Their efforts did not overcome the County's reluctance to continue contracting with Northwest, in part because the County did not believe the new board was properly constituted. The

County filed suit in early August 2002 against Northwest, former executive director McKee, and the individual members of the new board, with the objective of replacing the board and the management, either through a receivership (chapter 7.60 RCW) or a writ of quo warranto (chapter 7.56 RCW). The suit alleged violation of the Washington Nonprofit Corporation Act (chapter 24.03 RCW) and breach of contract, and also sought a declaratory judgment adjudicating the new board's authority, or lack thereof, to contract on behalf of the corporation.

Along with the suit, the County filed a motion asking the court to appoint a receiver or remove the individual defendants, and noted a show cause hearing. A hearing was held on the County's motion on September 27, 2002. Over the objection of the defendants, the court appointed a receiver pursuant to the receivership statute and ordered him to take immediate possession of Northwest. The court empowered the receiver to take possession and control of Northwest's assets, and to preserve, protect and liquidate them for the benefit of Northwest.[1] The order authorized the receiver to replace Northwest's management and the board of directors recruited by the management, and to appoint a new board. This court granted discretionary review of that order.

Appellants contend that there were no proper grounds for appointment of a receiver and that the receivership statute does not allow a receiver to be given the power to appoint new leadership for the corporation. They take the position that any problems identified by the audit could have been effectively addressed by less drastic remedies. McKee also argues that there were several material factual disputes requiring an evidentiary hearing before the court could rule on the motion.

■ "A receiver is a person appointed by a court or judicial officer to take charge of property during the pending of a

---

[1] The order initially granted the receiver the power to preserve, protect, and liquidate Northwest's assets for the benefit of the County. The trial court later properly amended the order to provide that the receiver would act for the benefit of Northwest.

civil action or proceeding, or upon a judgment, decree or order therein, and to manage and dispose of it as the court or officer may direct." RCW 7.60.010. The power of appointing a receiver is discretionary, and should be exercised with caution "in view of all the facts and circumstances of the particular case." *Union Boom Co. v. Samish River Boom Co.*, 33 Wash. 144, 152, 74 P. 53 (1903).

A statute provides that a receiver may be appointed by the court in the following cases:

(1) In an action by a vendor to vacate a fraudulent purchase of property, or by a creditor to subject any property or fund to his or her claim;

(2) In an action between partners, or other persons jointly interested in any property or fund;

(3) In all actions where it is shown that the property, fund, or rents and profits in controversy are in danger of being lost, removed, or materially injured;

(4) In an action or proceeding by a mortgagee or beneficiary for the foreclosure of a mortgage or deed of trust and the sale of the mortgaged property; when the mortgagee or beneficiary has a perfected assignment of rents pursuant to RCW 7.28.230(3); or when it appears that such property is in danger of being lost, removed, or materially injured; (or when such property is insufficient to discharge the debt, to secure the application of the rents and profits accruing, before a sale can be had);

(5) When a corporation has been dissolved, or is in the process of dissolution or is insolvent, or is in imminent danger of insolvency, or has forfeited its corporate rights, and when the court in its sound discretion deems that the appointment of a receiver is necessary to secure ample justice to the parties; and

(6) In such other cases as may be provided by law, or when, in the discretion of the court, it may be necessary to secure ample justice to the parties: PROVIDED, That no party or attorney or other person interested in an action shall be appointed receiver therein.

RCW 7.60.020.

The County contends the appointment of the receiver was warranted on several grounds identified by the statute. The

County contends that it is a creditor of Northwest; that it has a joint interest with Northwest in the corporation's reserve fund; and that Northwest was in imminent danger of insolvency in August 2002. Whether these three claims have substance we need not decide, because we find that the order appointing the receiver is fully authorized on two other statutory grounds: the corporation forfeited its corporate rights, and appointment of a receiver was necessary to secure ample justice to the parties. RCW 7.60.020(5), (6).

■■ The corporation forfeited its corporate rights because for years it had not had a legitimately functioning board of directors. According to the articles of incorporation, members of the board of directors and the manner of board meetings are to be determined by the corporation's bylaws. There is some doubt as to whether bylaws were ever adopted. The minutes of Northwest's initial board meeting on February 27, 1988 anticipate review of a set of bylaws, but in the course of the audit no bylaws could be found in the corporate records. Executive director McKee produced a set of bylaws in response to the audit and stated, in a "supplement" to the minutes, that the board did adopt bylaws during that original meeting. He contends that the legitimacy of the bylaws is a disputed issue of fact that should have been resolved below in an evidentiary hearing before the court proceeded to impose a remedy.

Any dispute about whether the bylaws produced by McKee actually were adopted by the original board is immaterial, because even assuming they did adopt these bylaws, the board did not follow them. According to these bylaws there were to be quarterly meetings of the board. Northwest's records show that its board met only six times between February 1988 and June 1994. The most recent minutes from a meeting of Northwest's board of directors are dated June 1994. They show a board consisting of Glenn Shoate, Sandra McKinnon, Gene Woodard, and Napoleon Caldwell. These board members resigned in August 1995, May 1996, September 1997, and August 1994 respectively. By the spring of 2002, these vacancies had not been filled.

Yet, Northwest—required by contract to keep the County notified of the current board membership—reported to the County in both January 2000 and January 2001 that its board consisted of Shoate, McKinnon, McKee and Woodward. Northwest informed the Washington Secretary of State's office in August 2001 that these individuals were board members, and also listed them as board members in Northwest's tax reports to the Internal Revenue Service in 1998, 1999, and 2001.

The bylaws produced by McKee provided that new board members are to be elected at an annual meeting by majority vote of those directors present whose terms do not expire at the end of that meeting. When the audit pointed out that for years there had been no board of directors, management recruited a new board of directors consisting of Noel Bain, Marie French, and John Yasutake—the "Bain" board. The former directors—Shoate, McKinnon, Woodard, Caldwell and McKee—all signed documents in July 2002 entitled "Consent in Lieu of Special Meeting of the Board of Directors," in which they consented to the selection of the Bain board members. In using this procedure to obtain new directors, they purported to follow a portion of the bylaws which authorizes action to be taken without a meeting "if a consent in writing setting forth the action so to be taken" is signed by "all of the directors entitled to vote with respect to the subject matter thereof."[2]

■ ■ Appellants—management and the Bain board—contend that by reconstituting the board in this fashion, they solved the problem of the legitimacy of Northwest's corporate governance, and thereby eliminated any necessity for judicial intervention. They emphasize that a receiver is not to be appointed because of problems that existed in the past. *See Forquer v. Inland Fin. Co.*, 142 Wash. 688, 693-94, 253 P.2d 1086 (1927). But the problem has been solved only if the method by which the new board was constituted is authorized by law; that is, if the directors

---

[2] Clerk's Papers at 181.

who had previously resigned were still actually entitled to participate in the selection of new board members. This is purely a legal question and an evidentiary hearing was not necessary to resolve it.

The Nonprofit Corporation Act provides in part that a director "shall hold office for the term for which the director is elected or appointed and until the director's successor shall have been selected and qualified." RCW 24.03.100. Northwest argues that under this language, the directors who resigned between 1994 and 1997 actually continued to hold office until their successors were selected and qualified.

Washington courts have not decided this precise issue, but other courts have held that resignation terminates the holding of office. The resignation of a corporate officer "becomes complete the moment the resignation is made to the proper body absent a statutory provision to the contrary." *Place v. P.M. Place Stores Co.*, 950 S.W.2d 862, 867 (Mo. Ct. App. 1996). In *Place*, resignations were held to be effective when tendered, notwithstanding a statute which, like Washington's, provides that directors shall hold office until their successors are duly elected. *Place*, 950 S.W.2d at 867. The general rule is that statutes, charters or bylaws providing that an officer or director will serve until a successor is chosen do not preclude resignation, nor do they operate to continue that officer or director in office until a successor has been chosen. *Koven v. Saberdyne Sys.*, 128 Ariz. 318, 322, 625 P.2d 907, 911 (1980). The rationale for this rule is sound: "When a director resigns, the inaction or refusal of a board of directors should not impose upon him or her a future liability or responsibility which that resigning officer does not desire to undertake." 2 WILLIAM MEADE FLETCHER, FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 349, at 171 (rev. vol. 1990).

The trial court wisely refused to endorse, as a principle of law controlling all nonprofit corporations, the notion that corporate directors can be held in office against their will until they elect their replacements. We adopt the general

rule and conclude as a matter of law that the resignations of Northwest's board members were effective when tendered. The consent forms signed in 2002 were ineffective to create a new board because, having resigned more than five years earlier, the former members no longer had authority to act for the corporation. As a result, the Bain board could not legitimately contract on behalf of Northwest.

Because Northwest allowed its board of directors to become defunct, and its management to operate without supervision, appointment of the receiver was appropriate on the ground that the corporation forfeited its corporate rights. RCW 7.60.020(5).

██ We also find that the appointment of the receiver was appropriate on the ground that it was necessary to secure ample justice to the parties. RCW 7.60.020(6). As all parties recognize, Northwest's employees provide a vital public service. Discontinuing the contract was not a desirable option as it would have meant severe disruption of services to indigent clients and layoffs of all staff. Yet the County could not prudently continue to commit public funds to an entity that lacked the authority to contract. The appointment of a receiver with the power to rehabilitate the corporation by appointing new leadership accomplished ample justice because it solved the problem of the defunct board while avoiding disruption of ongoing operations.

██ Appellants contend the court could have effectively addressed the problems discussed in the audit through contractual relief, such as damages, or by injunctive relief regulating Northwest's financial practices and use of public funds. It is well established that a receiver should not be appointed if there is any other adequate remedy. *Bergman Clay Mfg. Co. v. Bergman*, 73 Wash. 144, 147, 131 P. 485 (1913). But since the court could not pretend that the Bain board was legitimate, allowing that board to continue under restrictions was not an adequate remedy.

Appellants further argue that replacement of a corporation's management and board of directors is beyond the scope of the statutory powers of a receiver. A receiver is

appointed "to take charge of property during the pending of a civil action . . . and to manage and dispose of it as the court or officer may direct." RCW 7.60.010. "The receiver shall have power, under control of the court, to bring and defend actions, to take and keep possession of the property, to receive rents, collect debts, and generally to do such acts respecting the property, as the court may authorize." RCW 7.60.040.

██ ██ These are not narrow powers. A court acting in equity must act with restraint, but in extreme cases must have wide latitude to respond to the particular circumstances presented. *See Boothe v. Summit Coal Mining Co.*, 55 Wash. 167, 177-79, 104 P. 207 (1909). Allowing the receiver in this case to replace the management and the board of directors was directly related to preserving Northwest's assets and ensuring that they would be devoted to the continuation of services to Northwest's clients. Like the case reviewed in *Boothe*, this case is *"sui generis." Boothe*, 55 Wash. at 177. We hold that in these particular circumstances, where a corporation serving a vital public interest has allowed its board of directors to become defunct, empowering a receiver to reconstitute the leadership of the corporation was within the scope of a receiver's statutory powers.

██ Appellants also argue that the court erred by using the receivership statute to grant relief when the proper proceeding to determine who holds title to a corporate office is through a writ of quo warranto. A quo warranto action is an independent action available to correct an alleged usurpation or unlawful holding of a public or corporate office:

> An information may be filed against any person or corporation in the following cases:
>
> (1) When any person shall usurp, intrude upon, or unlawfully hold or exercise any public office or franchise within the state, or any office in any corporation created by the authority of the state.

RCW 7.56.010(1). By contrast, a receivership is merely ancillary to the main cause of action; it is not an indepen-

dent remedy. *Grays Harbor Commercial Co. v. Fifer*, 97 Wash. 380, 382, 166 P. 770 (1917).

 In Washington, appointment of a receiver to take over a corporation is one possible outcome of a quo warranto action, but only after a judgment has been entered. RCW 7.56.110. Acknowledging this limitation, the County clarified below that its motion to appoint a receiver pending the outcome of the underlying action should be considered only under the receivership statute. Appellants contend that by proceeding under the receivership statute, the court circumvented procedural safeguards provided by the quo warranto statute. But they have failed to identify any procedural safeguards that, if followed, would have led the court to any other result than the one it did reach. Their briefing is inadequate to show any reason why the County could not, without first proceeding to judgment, seek the ancillary remedy of a receivership.

Affirmed.

BAKER and COX, JJ., concur.