JABIR MUHAMMAD, Indiv. and as President and Chairman of the Board of Directors of the Muhammad Islamic Corporation, *et al.*, Plaintiffs-Appellants, v. SAFIYYA MUHAMMAD-RAHMAH *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—04—2622

Opinion filed January 12, 2006.—Rehearing denied March 9, 2006.—Modified opinion filed March 16, 2006.

Cantwell & Cantwell, of Chicago (Paul H. Scheuerlein, of counsel), for appellants.

Bruce J. Van Heukelem, of Hoogendoorn & Talbot, LLP, of Chicago, for appellees.

JUSTICE GREIMAN delivered the opinion of the court:

Plaintiffs Jabir Muhammad (Jabir), John Glenn Omar (John), and Dr. Samella Abdullah (Abdullah) appeal from the circuit court's denial of their request for declaratory judgment that they were the duly elected and legitimate directors of the Muhammad Islamic Corporation (Corporation), and that defendants Safiyya Muhammad-Rahmah (Safiyya), Omar Muhammad (Omar), and Mulazim Rahmah (Mulazim) were not the legitimate directors. For the reasons that follow, we affirm the circuit court's order and we remand with instructions to appoint a custodian to take possession of the Corporation's assets and establish a new board of directors, in accordance with the provisions of sections 112.55(c), (d), and (e) of the General Not For Profit Corporation Act of 1986 (Act) (805 ILCS 105/112.55(c), (d), (e) (West 2004)).

The present appeal represents this court's third encounter with this case. In 1995, Jabir filed a petition for leave to initiate a *quo warranto* action against the defendants alleging that they had improperly assumed the directorships and offices of the Corporation and acted illegitimately in removing Jabir as president and chairman of the board. The circuit court granted defendants' motion to dismiss, finding that any resolution of Jabir's claims would require interpretation of Islamic religious doctrine. Jabir appealed, arguing that the circuit court could resolve his claims under state laws. This court reversed, holding that the circuit court could resolve Jabir's claims applying the principles contained in the Corporation's governing documents and the provisions of the General Not For Profit Corporation Act of 1986 (Act) (805 ILCS 105/101.01 *et seq.* (West 1996)). *People ex rel. Muhammad v. Muhammad-Rahmah*, 289 Ill. App. 3d 740, 745-46 (1997).

On remand, Jabir filed an amended complaint for declaratory

judgment alleging that he and the other named plaintiffs were the rightful directors of the Corporation. Soon afterward, plaintiffs' counsel was granted leave to withdraw, and their replacement counsel was compelled to withdraw after a potential conflict arose. On the date the circuit court had set for status, July 21, 1999, neither plaintiffs nor their counsel appeared. On defendants' motion, the circuit court dismissed the complaint with prejudice for plaintiffs' failure to appear. Plaintiffs' new counsel filed an appearance on September 7, 1999, but was not informed that the case had been dismissed until November 10, 1999. Plaintiffs later filed a motion pursuant to section 2—1401 of the Code of Civil Procedure to vacate the dismissal order. 735 ILCS 5/2—1401(b) (West 1998). After a hearing, the circuit court granted the motion, stating that the dismissal order should not have been entered with prejudice. Defendants appealed. In a summary order, we affirmed, finding that the entry of the dismissal order with prejudice was erroneous and that the circuit court's subsequent vacatur was correct. *Muhammad v. Muhammad-Ramah*, No. 1—01—0004 (2002) (unpublished order under Supreme Court Rule 23).

On remand, plaintiffs filed a second amended complaint seeking declaratory judgment that Jabir, John Glenn Omar, and Abdullah were the duly elected, legitimate board of directors and that defendants were without authority to represent themselves as the Corporation's directors, and orders compelling defendants to turn all corporate funds and assets over to plaintiffs. The trial proceedings took place initially in front of Judge Lester Foreman and subsequently in front of Judge Deborah Mary Dooling. The following facts were established.

Jabir established the Corporation in 1978, when it was known as the Jabir Muhammad Mosque (it was renamed in 1988). The Corporation's articles of incorporation named Jabir as its president and an initial member of its board of directors, which also included Wallace D. Muhammad, and Charles Lomax. There is no record to indicate that the Corporation filed any bylaws prior to 1991.

Jabir donated a plot of land to the Corporation, and a formal mosque was constructed there in 1983. Jabir's daughter, Safiyya, began working for the Corporation as a secretary in 1985 and in 1987 was appointed to the board of directors and elected to serve as the Corporation's treasurer. Her husband, Mulazim, was appointed to the board in 1990.

The board, as it consisted then of Jabir, Safiyya, Mulazim, and Jabir Nuri Madina, adopted the Corporation's initial bylaws on February 1, 1991.

One of the bylaws, section 8.2, provided that all board members

must be Muslim and abstain from major Islamic violations and that no spouse of a director would be a director as well.

Section 8.3 established that the Corporation would have an odd number of directors, that future directors would be chosen by the current directors, and that each director would hold office as long as he or she was in good health, living a sound Muslim life, and performing well in that capacity. The same provision also stated that a board member could resign at any time by giving notice to the Corporation's president or secretary.

Section 8.6 stated that notice of a special board meeting would issue two days beforehand and that any director could waive notice; for example, by attending such a meeting. Section 8.8 established that two or more board members, at least one of whom was the president, constituted a quorum for the purpose of transacting Corporation business. Section 8.12 named Jabir as the chairman of the Corporation's board of directors. It was unclear who else constituted the board at that time.

Prior to the establishment of the bylaws in 1991, the articles of incorporation made no provision for the terms of board members or their election.

Jabir testified that he had founded the Corporation in 1978 as a nonprofit corporation. He also stated that Lomax had prepared and filed the Corporation's annual reports from 1978 until 1987, that he and Abduallah Roussi prepared the annual report for 1987, and that he signed the annual reports for the years 1988 until 1993. The reports from 1994 until 2002 had been signed by Safiyya in her capacity as the Corporation's secretary, but Jabir denied that Safiyya was the secretary at that time or that she had the authority to issue annual reports.

Jabir identified the Corporation's bylaws and stated that he intended to revise them at one time, in order to ensure that either he or a select few individuals would serve on the board in the future. He asserted that he and Madina had adopted the revised bylaws but that any records thereof and the minutes of the meeting at which they were adopted were stolen by defendant Omar.

Jabir also related that in 1993, the Corporation undertook a fundraising effort to support its mission. It solicited donations from residents of the Middle East, some of whom were reluctant to support an organization with a father and daughter serving on its board of directors. As a result, Safiyya left the board but remained in her capacity as Jabir's executive secretary. Jabir could not recall any of the circumstances surrounding her decision to resign or whether it had been recorded in any way. Jabir could also not recall how Rahmah

came to be identified as one of the board's directors in 1994 and asserted that section 8.2 of the bylaws should have prevented their serving as directors simultaneously. He also asserted that Omar had never been elected as a board director either.

Jabir related that he learned of his removal from the board in 1995 by Safiyya, Rahmah, and Omar when he attempted to enter the mosque and found that the locks had been changed during renovations. To his knowledge, the board consisted at that time of himself, John Glenn Omar, Samella Abdullah, and one Dr. Ghazi.

John Glenn Omar testified that he became involved with the Corporation sometime in the early 1990s and that he agreed to become a board member in May 1993. He recalled meeting with Jabir and Abdullah to that effect, but there were no records documenting either the meeting or his appointment. He also recalled electing Dr. Ghazi to the board after his appointment. An earlier deposition he had given conflicted with that testimony in that he had previously stated that he was appointed by Jabir and Bin Asad and that he had never heard of Dr. Ghazi. The only documentation indicating that John was a director of the Corporation was its 1993 annual report, which did not list Jabir as the Corporation's director.

According to an agreed-upon bystander's report, Abdullah testified that she had been invited to serve on the board by Safiyya and that Jabir had informed her that she had been appointed. However, no documentation indicated her appointment, and the Corporation's minutes only indicated that she had served on a committee organized by the board of directors.

Judge Foreman passed away after a majority of the testimony was taken, and the parties agreed to have the case decided by Judge Dooling. The judge examined the evidence submitted in support of each plaintiff's claim individually.

As to Jabir's claim that he was a duly elected board member and the Corporation's rightful director, the circuit court noted that the bylaws governing board membership did not exist prior to their adoption in 1991, and thus, it examined his contentions under the General Not For Profit Act as it read at the time of the Corporation's founding in 1978. At that time, the statute read as follows:

> "The directors constituting the first board of directors shall be named in the articles of incorporation and shall hold office until the first annual election of directors or for such other period as may be specified in the articles of incorporation or the bylaws. Thereafter, directors shall be elected or appointed in the manner and for the terms provided in the articles of incorporation or the bylaws. In the absence of a provision fixing the term of office, the

term of office of a director shall be one year." Ill. Rev. Stat. 1977, ch. 32, par. 163a17.

The court noted that Jabir was named as one of the Corporation's initial directors but that the articles of incorporation made no provision as to directors' terms of office. The court determined that, pursuant to the statute, Jabir's first term would run until the first annual election of the board of directors. Without any evidence indicating that any such election took place the following year or in other following years, the court could not conclude that Jabir was a duly elected member of the Corporation's board of directors.

The court next dealt with John Glenn Omar's claim for declaratory judgment and turned to the Corporation's bylaws to analyze his contention that he was appointed to the board in 1993. The court noted that section 8.3 of the bylaws, which covered the composition of the board and the selection of its members, but omitted any reference to their terms of office, appeared to conflict with section 108.10(c) of the Act, which provides that the terms of directors expire at a given corporation's next meeting for the purpose of electing directors. 805 ILCS 105/108.10(c) (West 2004). The court noted, however, that it was unnecessary to apply either the bylaws or the statute to resolve the expiration of John Glenn Omar's term because there was no evidence indicating that it ever commenced. The court noted the conflicts between John Glenn Omar's in-court testimony and his earlier deposition, as well as the lack of any corporate records as to his appointment as a board member, and concluded that he had not submitted sufficient evidence to sustain his claim for declaratory judgment.

The court similarly found that there was no documentary evidence to support Abdullah's claim that she was a duly elected and legitimate board member, either in the form of corporate resolutions or minutes, and that her testimony was not sufficient to sustain her claim, seeing as it was refuted by defendants' proffered evidence of corporate minutes indicating that Abdullah was selected only to serve as a member of a committee, not as a member of the board of directors.

The court concluded that plaintiffs' primary claim for declaratory judgment was unfounded because they were not able to present sufficient evidence that they were the duly elected or appointed board of directors and that the remainder of the relief they sought was moot, and therefore, it denied their request. The court also noted that any declaration that defendants may have sought as to their own legitimacy as the Corporation's directors would also be unfounded, given the lack of evidence that any of them had been elected or appointed by other legitimate board members.

Plaintiffs thereafter filed a motion to reconsider, alleging that the

circuit court erroneously applied the relevant law and that Jabir remained a director as a holdover as a result of the failure of the Corporation to elect new directors and officers subsequent to its establishment. Plaintiffs sought a declaration that the initial board of directors, which included Jabir, was still the duly appointed and legitimate holdover board of directors. The circuit court denied the motion and plaintiffs now appeal.

Plaintiffs first contend that the circuit court's conclusion that none of them were duly elected or legitimate board members was against the manifest weight of the evidence. They argue that there was no evidence in the record indicating that Jabir had ever been removed as a director prior to 1995 and that the Corporation's annual reports for the preceding years served as *prima facie* evidence of the assertion that Jabir was indeed a legitimate director, pursuant to section 1.20 of the Business Corporation Act of 1983 (805 ILCS 5/1.20 (West 2004)). Plaintiffs also point out that the parties had stipulated as to the board's membership through the year 1990 and that the circuit court therefore erred in referring to the prior years in examining Jabir's claim as a duly elected director. They also assert that Jabir was confirmed as the board chair in the Corporation's 1991 bylaws, which also invalidate the need for election of future directors since they provide that directors may serve as long as they are able and continue to act in accordance with Islamic doctrine.

Plaintiffs also maintain that their evidence was sufficient to support their contention that defendants wrongfully usurped their authority. In support, they point to the Corporation's 1993 annual report, which lists Jabir as president and John Glenn Omar and Abdullah as directors. They attest that Safiyya and Rahmah purported to hold a board meeting in January 1995, notice of which was given to Jabir by telephone a few days before and which was never given to the other board members, and contend that defendants' actions violated section 108.25 of the Act, which requires that the proposed removal of an officer must be transmitted to other board members at least 20 days prior to the meeting at which it is to occur. 805 ILCS 105/108.25 (West 2004). Plaintiffs also argue that the meeting defendants conducted and the resulting composition of the board thereafter violated the Act as well as the Corporation's bylaws.

Plaintiffs also argue that the circuit court erred in failing to declare that defendants were not the legitimate members of the Corporation's board because plaintiffs presented an actual controversy as to the board's composition but failed to issue a definitive resolution and left the directorship of the Corporation open to further controversy. They further contend that the trial court ignored inconsistencies in defendants' in-court testimony and depositions they had given in 1995.

■ In general, the grant or denial of a request for declaratory judgment rests within the sound discretion of the trial court, and this court will not reverse such a decision absent an abuse of that discretion. *Roland Machinery Co. v. Reed*, 339 Ill. App. 3d 1093, 1096 (2003). As to the appropriate standard of review, the parties both cite to *1350 Lake Shore Associates v. Mazur-Berg*, 339 Ill. App. 3d 618 (2003), which dealt with several actions for declaratory judgment and reviewed the trial court's decision, which followed a bench trial, employing a manifest weight standard. *1350 Lake Shore Associates*, 339 Ill. App. 3d at 628. A trial court's judgment is against the manifest weight of the evidence only when an opposite conclusion is clearly evident or the factual findings upon which it is based are unreasonable, arbitrary, or not based on the evidence. *1350 Lake Shore Associates*, 339 Ill. App. 3d at 628. In general, this court affords deference to the trial court's perception of the evidence before it, because the trial judge is in a better position than we to observe the witnesses and assess their credibility. *In re Marriage of Stopher*, 328 Ill. App. 3d 1037, 1041 (2002). However, we must note that the deciding judge in this case observed the in-court testimony of only one of seven total witnesses. While we are aware of no authority prescribing a different standard of review under these circumstances, we believe that a lesser degree of deference may be owed where the reviewing court weighs essentially the same evidence—here, transcribed testimony and bystanders' reports—as the trial court did.

On appeal, plaintiffs spend a majority of their brief pointing out evidence damaging to defendants rather than citing evidence in support of their own claims to be the Corporation's legitimate directors. They cite very little legal authority in support of their position or casting doubt on the trial judge's findings and decision.

■ The burden of proof in a civil proceeding generally rests on the party seeking relief and is always borne by the plaintiff in an action for declaratory judgment. *Farmers Auto Insurance Ass'n v. Gitelson*, 344 Ill. App. 3d 888, 896 (2003). In this case, the onus was on plaintiffs to prove to the trial court that they were entitled to the relief they sought, *i.e.*, the declaration that they were the duly elected or appointed and legitimate directors of the Corporation. Considering the evidence plaintiffs presented to that effect, we can only agree with the trial court that it was sorely lacking.

Plaintiffs also appeal the circuit court's denial of their motion to reconsider, contending that the court abused its discretion because they never expected the court to examine the board's composition prior to 1990 and because the court's refusal to name either plaintiffs or defendants as the legitimate directors effectively left the Corpora-

tion without any governance. Plaintiffs reiterate their argument that Jabir should be considered a holdover director as a result of the Corporation's failure to hold regular elections of board members since its inception. They rely on this court's opinion in *Galler v. Galler*, 45 Ill. App. 2d 452 (1964), *aff'd in part & rev'd in part*, 32 Ill. 2d 16 (1964), for the proposition that a corporation's failure to elect officers or directors does not necessarily end the terms of those previously elected.

Defendants counter that plaintiffs' motion to reconsider raised an entirely new issue and legal theory as to the legitimacy of Jabir as a director and thus did not raise any issues as to newly discovered evidence, changes in the law, or errors in the court's previous application of the relevant law, or otherwise compel the court to reexamine the facts and law presented at trial, as is the purpose of a motion to reconsider. See *Stringer v. Packaging Corp. of America*, 351 Ill. App. 3d 1135, 1141 (2004). Defendants assert that plaintiffs' arguments in their motion inserted two new claimants into the controversy (the other initial directors of the Corporation) and presented a new theory as to plaintiffs' claims, *i.e.*, Jabir as holdover director, where the trial court had not considered it at trial nor any evidence to support it.

When reviewing a trial court's denial of a motion to reconsider that was based on new matters, such as additional facts or new arguments or legal theories that were not presented during the course of the proceedings leading to the issuance of the order being challenged, this court employs an abuse of discretion standard. When reviewing a denial of a motion to reconsider based only on the circuit court's application of existing law, the standard is *de novo*. *O'Shield v. Lakeside Bank*, 335 Ill. App. 3d 834, 838 (2002). Seeing as plaintiffs' motion to reconsider in this instance was based on a new legal theory as to Jabir's legitimacy as one of the Corporation's directors, the standard of review in this instance is abuse of discretion.

The authority relied on by plaintiffs in their motion to reconsider and on appeal to support their contention that Jabir was a holdover director seems tenuous at best. There are no recent cases propagating hard-and-fast rules as to that proposition, and the only decisions that seem on point were issued in 1958 and in 1964, preceding the General Not for Profit Corporation Act of 1986, which would otherwise govern the selection and retention of the Corporation's directors in the absence of specific articles or bylaws, by several years.

In *Westlake Hospital Ass'n v. Blix*, 13 Ill. 2d 183 (1958), the Illinois Supreme Court held that the creation of a self-perpetuating board of directors by a valid amendment of a corporation's bylaws did not deprive members of their constitutional rights as shareholders.

The court made a passing reference to the board that instituted the bylaws as holdover directors from their initial election in 1949 until their successors were duly elected in 1953. *Westlake Hospital Ass'n*, 13 Ill. 2d at 191. The decision did not deal so much with the composition of the board as to the propriety of the bylaws it enacted, and, as the court remarked: "The wisdom and desirability of a co-optating [*sic*] or self-perpetuating board of directors for a charitable corporation is a question upon which we express no opinion. That line of argument should be addressed to the legislature and not the court." *Westlake Hospital Ass'n*, 13 Ill. 2d at 196.

In *Galler*, the appellate court did note that the failure of a corporate body to elect officers or directors does not end the terms of those previously elected. *Galler*, 45 Ill. App. 2d at 466. However, that case also turned on the validity of a shareholders' agreement and the directors' actions thereunder, not specifically on the directors' legitimacy as officeholders.

The problem with the authority upon which plaintiffs rely in support of the holdover argument is that in each case, the relevant corporate body at some point did elect its directors and officers. Here, there is no indication that any election of any director or officer ever took place. It appears that the purported directors were merely assumed to be the directors and there was no need to ratify their status or elect successors. It occurs to us that, at some point, a corporate body must elect its directors, not just name them at the time of formation and assume that they would hold office in perpetuity.

■ The current statute reads as follows:

"(c) The terms of all directors expire at the next meeting for the election of directors *following their election*. *** The term of a director *elected to fill a vacancy* expires at the next annual meeting of the members entitled to vote ***. ***

(d) Despite the expiration of a director's term, he or she continues to serve until the next meeting of members entitled to vote on directors at which directors are elected." (Emphasis added.) 805 ILCS 105/108.10 (West 2004).

■ On its face, this provision appears to indicate that the initial election of a director to his or her present office would be a condition precedent to his or her holding that office until the next election of directors. In the life of this particular Corporation, it seems there never was any election of any directors or officers subsequent to its inception. Therefore, it would appear that there never were any duly elected officers whose tenure could have held over until the next election or the enactment of the bylaws.

Accordingly, because the authority cited by plaintiffs seems inap-

plicable in this instance, and because the trial court was under no obligation to rule under a legal theory that had not been argued at trial, the denial of plaintiffs' motion to reconsider was not an abuse of discretion.

However, the evidence before us, coupled with the trial court's decision, only raises more questions than it answers, and we believe we would be remiss in simply affirming the ruling. While there is no clear evidence in the record to indicate that plaintiffs are the proper board of directors for the Corporation, there is also a paucity of evidence to indicate that defendants—or anyone else, for that matter—are the legitimate directors either. We believe that simply affirming the trial court's denial order in this instance would only exacerbate the confusion surrounding the Corporation's leadership and that a failure on our part to adjudicate any kind of solution would only perpetuate the decade-long conflict we have been asked to resolve.

Under the Act, one of the remedies courts may prescribe in actions for dissolution is to appoint a custodian where it appears that such an appointment will remedy the grounds alleged by the complaining party. 805 ILCS 105/112.55(a)(2) (West 2004). Pursuant to that provision, a court-appointed custodian can "exercise all the powers of the corporation's board of directors and officers to the extent necessary to manage the affairs of the corporation to the general advantage of its creditors and in furtherance of its purposes, until such time as such custodian shall be removed *** by a vote of the members sufficient *** to elect the requisite number of directors needed to take action." 805 ILCS 105/12.55(c) (West 2004).

Illinois courts may initiate such an appointment as a remedy "in times of corporate strife to help guide the company through crisis toward the goal of stabilization and prosperity." *Abreu v. Unica Industrial Sales, Inc.*, 224 Ill. App. 3d 439, 443 (1991). When appointing an individual as custodian, the court considers "only the best interests of the corporation, and not those of any warring factions." *Abreu*, 224 Ill. App. 3d at 443.

A recent case decided by the Court of Appeals of Washington bears a resemblance to the circumstances presented here. In *King County Department of Community & Human Services v. Northwest Defenders Ass'n*, 118 Wash. App. 117, 75 P.3d 583 (2003), a nonprofit corporation that contracted with the county to provide legal services was subject to an audit concerning the actions of its managing officers. During the course of the proceedings, it was discovered that the corporation's former board members had resigned and that the present board had not been appointed in accordance with the corporation's bylaws or the relevant Washington statute. The trial court found that the corpora-

tion had forfeited its corporate rights where, for several years, it did not have a legitimately functioning board of directors to supervise the actions of its officers. The court appointed a receiver to take possession of the corporation's assets, to replace its management, and to appoint a new board of directors. *Northwest Defenders*, 118 Wash. App. at 121, 75 P.3d at 585-86.

On appeal, the corporation contested the appointment of the receiver, arguing that there were no proper grounds for such an order and that a receiver would not be statutorily authorized to appoint new leadership. The appellate court affirmed, finding that the appointment of a receiver was authorized because the corporation had forfeited its corporate rights and such an appointment was necessary to secure ample justice to the parties. The court reasoned that a receiver was appropriate because the corporation provided a vital public service and the county could not prudently commit public funds to an entity that lacked the capacity to contract; a receiver would rehabilitate the corporation by appointing new leadership while avoiding the disruption of its services, thereby accomplishing ample justice for all affected parties. The court concluded that, while appointing a receiver with the power to replace the corporation's leadership may have been an extreme judicial remedy, such a measure was directly related to preserving its assets and ensuring that they would be devoted to the continuation of its services to its clients. *Northwest Defenders*, 118 Wash. App. at 126-27, 75 P.3d at 588-89.

We reach a similar conclusion here. Plaintiffs' counsel has repeatedly emphasized to this court the vast amounts of time, money, care, and effort Jabir has invested in the Corporation and that the mosque has thrived for decades due in no small part to his efforts and leadership. While we are in no position to question Jabir's dedication to the institution itself, we cannot allow it to overshadow his lack of attention to accurate record-keeping and corporate governance.

As is apparent from the record, and as we stated above, there is no indication that after its inception in 1978, the Corporation elected any of its board members in accordance with the Act or that it appointed its board members in accordance with its bylaws after 1991. Aside from Jabir, there is no mention of the other initial board members having been active or involved as directors since being named in the articles of incorporation, and there are no definitive records indicating when or how their replacements were elected or appointed, only conflicting and confusing testimony. As did both the circuit court and the Washington court in *Northwest Defenders*, we can only reach the conclusion that the Corporation has had no functioning board of directors for several years. Here, the circuit court could reach no other

conclusion than the one it did, *i.e.*, that plaintiffs did not have any more legitimate claim to the status of board members than defendants did. Therefore the denial of plaintiffs' petition for declaratory judgment was not in error. However, as stated above, our mere affirmance would not provide any real resolution to the matters presented here.

While the circumstances of this case would normally warrant dissolution, we believe such a remedy is uncalled for in this situation. The parties have made it apparent that this Corporation still serves a vital interest in the community, and we believe that its compulsory absence would only be a detriment to the congregation it currently serves. Furthermore, a forced dissolution could lead to the establishment of rival institutions by the disparate factions represented in this case, which we feel would only lead to future confrontations before this court.

Accordingly, and pursuant to our judicial powers under Supreme Court Rule 366(a)(5) (155 Ill. 2d R. 366(a)(5)), we remand this matter to the circuit court with instructions to appoint a custodian to take possession of the Corporation's assets and establish a new board of directors, in accordance with the provisions of sections 112.55(c), (d), and (e) of the Act. 805 ILCS 105/112.55(c), (d), (e) (West 2004). Such an appointment, we believe, will remedy the grounds alleged in the initial suit by investing the custodian with the power to establish a new and legitimate board of directors in an unbiased manner, and document their appointments for the purposes of clarity and avoiding controversy. The new board should in turn appoint new officers and serve to supervise their management of the Corporation.

While this remedy might appear extreme, we believe that the appointment of a custodian with the authority to establish a new and permanent board of directors would enable the Corporation to allow it to continue to serve its congregation and to aid it in any fund-raising ventures, as was necessary when the Corporation adopted its bylaws in the early 1990s.

For the foregoing reasons, we affirm the judgment of the circuit court and remand for further proceedings in accordance with this opinion.

Affirmed.

QUINN, P.J., and MURPHY, J., concur.