# Illinois Official Reports

## Appellate Court

---

*Neighborhood Lending Services, Inc. v. Callahan*, 2017 IL App (1st) 162585

---

| | |
|---|---|
| Appellate Court Caption | NEIGHBORHOOD LENDING SERVICES, INC., Plaintiff-Appellee, v. BARBARA CALLAHAN; UNKNOWN HEIRS and LEGATEES of Lillie M. Callahan; UNKNOWN OWNERS and NONRECORD CLAIMANTS; and RICHARD KUHN, as Special Representative for Lillie M. Callahan, a/k/a Lillian M. Callahan Deceased, Defendants (Philip Sanders, Intervenor-Appellant). |
| District & No. | First District, Fifth Division<br>Docket No. 1-16-2585 |
| Filed<br>Rehearing denied | September 1, 2017<br>September 27, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 15-CH-07374; the Hon. Michael Mullen, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Margaret A. Lundahl, of Chicago, for appellant.<br><br>Codilis & Associates, P.C., of Burr Ridge (Louis J. Manetti, Jr., and Margaret Manetti, of counsel), for appellee. |

| Panel | JUSTICE ROCHFORD delivered the judgment of the court, with opinion.
Presiding Justice Hoffman and Justice Delort concurred in the judgment and opinion. |

**OPINION**

¶ 1     Plaintiff-appellee, Neighborhood Lending Services, Inc. (NLS), brought this mortgage foreclosure suit against defendants Barbara Callahan, unknown heirs and legatees of Lillie M. Callahan, unknown owners and nonrecord claimants, and Richard Kuhn, as special representative for Lillie M. Callahan, a/k/a Lillian M. Callahan (deceased). After the property subject to the suit was foreclosed upon and sold, and after a motion to confirm the sale was filed, a petition to intervene was filed by intervenor-appellant, Phillip Sanders. While the circuit court granted the motion to intervene, it denied any objections to the sale raised by Sanders and granted the motion to confirm the sale. The circuit court thereafter denied Sanders's motion to reconsider. For the following reasons, we affirm both the confirmation of the sale and the denial of the motion to reconsider.

¶ 2                                    I. BACKGROUND

¶ 3     The subject of this foreclosure case is a residential property located at 6103 South Sangamon Street, Chicago, Illinois (the property). The record reflects that a quitclaim deed was executed and recorded in 1984, transferring the property from Robert and Lillie Mae Callahan, as husband and wife, to Robert, Lillie, and their daughter, Barbara Ann Callahan. The property was held in joint tenancy.

¶ 4     In 1991, Lillie and Barbara granted a mortgage on the property to NLS. That mortgage was released in 2005. In 2006, Lillie alone granted NLS a second mortgage on the property, the mortgage that is at issue in this case. That mortgage secured an original indebtedness of $16,692.

¶ 5     Lillie died on March 14, 2012. On May 5, 2015, NLS filed this mortgage foreclosure action, pursuant to the Illinois Mortgage Foreclosure Law (Foreclosure Law) (735 ILCS 5/15-1101 *et seq.* (West 2014)). NLS recorded a *lis pendens* and notice of foreclosure on May 13, 2015.

¶ 6     On June 17, 2015, having been granted leave of court, NLS filed the operative amended complaint, adding Mr. Kuhn as a defendant solely to act as a special, court-appointed personal representative for Lillie. Therein, NLS alleged that the mortgage had not been paid since January 2013 and was, therefore, in default. Lillie and Barbara were identified as owners of the property, with Barbara additionally identified as having a possible interest in the property as Lillie's heir. Again, the mortgage and note attached as exhibits to the complaint reflect that they were executed in 2006, solely by Lillie.

¶ 7     All of the named defendants (excluding Mr. Kuhn) were served by publication. None filed an appearance or answer to the complaint. On November 23, 2015, the circuit court entered the following orders: (1) an order of default against Barbara, unknown heirs and legatees of Lillie M. Callahan, and unknown owners and nonrecord claimants; (2) summary

judgment against Richard Kuhn, as special representative for Lillie; and (3) a judgment for foreclosure and sale in favor of NLS against all defendants. A notice of sale was issued on January 14, 2016. On February 25, 2016, a sale was held and the property was sold to NLS for $15,500, leaving a $16,704.29 deficiency with respect to the total amount of $31,854.29—which included interest and fees—owed to NLS. A motion seeking confirmation of the sale was filed by NLS on March 25, 2016.

¶ 8        On April 11, 2016, Sanders filed a petition to intervene in this case, pursuant to section 15-1501(e)(3) of the Foreclosure Law. 735 ILCS 5/15-1501(e)(3) (West 2014). According to Phillip's petition to intervene, Robert died in 1990.[1] Thus, according to the petition, when Lillie died in 2012, Barbara was left as the sole surviving joint tenant of the property. The petition further contended that Barbara thereafter executed a quitclaim deed transferring the property to Sanders on December 9, 2013, before NLS filed this suit or recorded its *lis pendens*. A copy of that deed was attached to the petition. Sanders purportedly took immediate possession of the property and placed signs on the property indicating the change in ownership and providing his contact information.

¶ 9        Contending that he first learned of this foreclosure action when Barbara provided him a notice of sale on February 20, 2016, Sanders investigated the issue. He located the deed transferring the property to him on March 13, 2016, discovering for the first time that it had never been recorded.[2] He then contacted an attorney and filed the motion to intervene.

¶ 10        Based upon these factual allegations, Sanders contended that, while he would be bound by any order entered in this case, his interests were not otherwise properly represented. His petition, therefore, asked the circuit court to allow him to intervene "to be given an opportunity to redeem or otherwise obtain the benefit of his bargain" and be granted "such other and further relief as this Court deems just and appropriate under the circumstances."

¶ 11        On April 21, 2016, the circuit court entered an order granting Sanders's petition to intervene. Additionally, "construing Sanders' petition as an objection to [p]laintiff's motion confirming sale," the order denied any such objection. In a separate order entered the same day, the circuit court confirmed the sale of the property.

¶ 12        On May 2, 2016, Sanders filed a motion to reconsider. He specifically contended therein that, pursuant to our supreme court's decision in *Harms v Sprague*, 105 Ill. 2d 215 (1984), Lillie's interest in the property and the lien on the property created by the mortgage she gave to NLS in 2006 were immediately extinguished upon Lillie's death. Therefore, Sanders asserted that "[b]ecause Plaintiff's lien was extinguished by operation of law upon the death of Lillie Mae, Plaintiff could not foreclose on the property." Sanders, therefore, asked the circuit court to "reconsider the decision to approve the sale of the subject property, vacate that order and dismiss the complaint, or for such other relief as the Court finds fair and equitable."

¶ 13        NLS filed a written response to the motion to reconsider, and Sanders filed a written reply. In his reply, Sanders specifically argued for the first time that, in light of Lillie's death and the decision in *Harms*, the circuit court lacked subject matter jurisdiction over this matter

---

[1]There is nothing else in the record confirming this assertion. Nevertheless, we note that NLS has never contested that Robert is deceased, and it identified only Lillie and Barbara as owners of the property in its foreclosure complaint.

[2]There is no indication in the record that, to date, this deed has ever been recorded.

and its orders were void. Asserting that void orders can be attacked at any time, Sanders, therefore, asked the circuit court to "reconsider the decision to approve the sale of the subject property, vacate that order and all others, dismiss the complaint, and for such other relief as the Court finds fair and equitable."

¶ 14 The circuit court denied the motion to reconsider on August 24, 2016, and Sanders timely appealed from that order and from the order confirming the sale.

¶ 15                                    II. ANALYSIS

¶ 16 On appeal, Sanders contends that the circuit court improperly confirmed the sale of the property and improperly denied his motion to reconsider that decision, in part because it lacked subject matter jurisdiction over this matter. For a number of reasons, we reject Sanders's arguments and affirm the judgment of the circuit court.

¶ 17 We first consider Sanders's challenge to the circuit court's subject matter jurisdiction, as that is his primary argument and it is an issue that "cannot be waived, stipulated to, or consented to by the parties." *Bradley v. City of Marion*, 2015 IL App (5th) 140267, ¶ 13. We review *de novo* the issue of a circuit court's subject-matter jurisdiction. *In re Estate of Ahern*, 359 Ill. App. 3d 805, 809 (2005).

¶ 18 Our supreme court has recognized that subject matter jurisdiction:

"[R]efers to the power of a court to hear and determine cases of the general class to which the proceeding in question belongs. [Citations.] With the exception of the circuit court's power to review administrative action, which is conferred by statute, a circuit court's subject matter jurisdiction is conferred entirely by our state constitution. [Citations.] Under section 9 of article VI, that jurisdiction extends to all 'justiciable matters.' [Citation.] Thus, in order to invoke the subject matter jurisdiction of the circuit court, a plaintiff's case, as framed by the complaint or petition, must present a justiciable matter." *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 334-35 (2002).

¶ 19 A justiciable matter is "a controversy appropriate for review by the court, in that it is definite and concrete, as opposed to hypothetical or moot, touching upon the legal relations of parties having adverse legal interests." *Id.* at 335.

¶ 20 Here, NLS brought this suit to foreclose a mortgage on the property, pursuant to the Foreclosure Law. As a number of prior decisions have recognized, such a suit is one within the general class of cases the circuit court has the inherent power to hear and determine. *Nationstar Mortgage, LLC v. Canale*, 2014 IL App (2d) 130676, ¶ 14 ("There is no doubt that courts have the inherent power to hear and determine foreclosure cases."); *Beal Bank v. Barrie*, 2015 IL App (1st) 133898, ¶ 21 (same). Thus, any general attack on the circuit court's subject matter jurisdiction would appear to be fundamentally unfounded.

¶ 21 More specifically, however, Sanders contends that the record reflects that Robert died in 1990 and that, when Lillie died in 2012, Barbara became the sole surviving joint tenant of the property. Sanders contends that Barbara, therefore, held sole ownership in the property, unencumbered by the mortgage Lillie alone granted to NLS, when Barbara executed a quitclaim deed to him in 2013. Therefore, NLS purportedly has no interest in the property upon which to premise the circuit court's subject matter jurisdiction over this foreclosure suit. Sanders supported his argument by citation to the decision in *Harms*, in which our

supreme court recognized that (1) a mortgage given by one joint tenant in a property does not sever the joint tenancy, (2) the property right of the mortgaging joint tenant is extinguished at the moment of his death, (3) such a mortgage by one joint tenant does not survive as a lien on the property following the mortgaging joint tenant's death, and (4) therefore, the surviving joint tenant takes the property unencumbered by any mortgage granted solely by a deceased joint tenant. *Harms*, 105 Ill. 2d at 224-26.

¶ 22 Even accepting all of Sanders's other factual and legal assertions, we would not agree with his conclusion that the circuit court, therefore, lacked subject matter jurisdiction over this suit. It is well recognized that "even a defectively stated claim is sufficient to invoke the court's subject-matter jurisdiction, as '[s]ubject matter jurisdiction does not depend upon the legal sufficiency of the pleadings.' [Citation.] In other words, the *only* consideration is whether the alleged claim falls within the general class of cases that the court has the inherent power to hear and determine." (Emphasis in original.) *In re Luis R.*, 239 Ill. 2d 295, 301 (2010). As Sanders's specific contentions are—at best—an attack on the *merits* of the foreclosure suit brought by NLS, they do nothing to alter our conclusion that the circuit court had subject matter jurisdiction over the issues framed by the complaint filed by NLS. Similar conclusions have been reached under similar circumstances in the past. *Canale*, 2014 IL App (2d) 130676, ¶ 14; *Barrie*, 2015 IL App (1st) 133898, ¶ 21.

¶ 23 Indeed, Sanders's arguments in this regard are more properly viewed as contentions that, because it purportedly no longer had any interest in the property, NLS lacked *standing* to bring this suit. "The doctrine of standing is designed to preclude persons who have no interest in a controversy from bringing suit" and "assures that issues are raised only by those parties with a real interest in the outcome of the controversy." *Glisson v. City of Marion*, 188 Ill. 2d 211, 221 (1999). "[S]tanding requires some injury in fact to a legally cognizable interest." *Id.* However, our supreme court has stated that "lack of standing in a civil case is an affirmative defense, which will be waived if not raised in a timely fashion in the trial court." *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 508 (1988). It has also recognized that issues of standing do not implicate the court's subject matter jurisdiction. *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 252 (2010). Thus, even if NLS did lack standing, that would not support Sanders's contention that the circuit court's orders were, therefore, void for lack of jurisdiction.

¶ 24 We also reject Sanders's reliance upon the decision in *ABN AMRO Mortgage Group, Inc. v. McGahan*, 237 Ill. 2d 526 (2010), in support of his argument that "[w]hile the court would have subject matter jurisdiction ordinarily over this kind of suit, there was no existing lien on the property to give the court jurisdiction over the property." In *McGahan*, our supreme court recognized that (1) mortgage foreclosure actions are *quasi in rem*, (2) "the mortgagor, the person whose interest in the real estate is the subject of the mortgage, is a necessary party defendant to the foreclosure proceedings," (3) "it is necessarily true that there must be personal service on the mortgagor," and (4) therefore, "a mortgagee must name a personal representative for a deceased mortgagor in a mortgage foreclosure proceeding in order for the circuit court to acquire subject matter jurisdiction." *Id.* at 528, 535-36. Here, NLS complied with this requirement by naming Mr. Kahn as a defendant to represent Lillie's interest in the property—whatever that interest might or might not be. Thus, *McGahan* does nothing to support Sanders's jurisdictional argument in this matter.

¶ 25    Having concluded that the circuit court had subject matter jurisdiction over this matter, we now address Sanders's remaining contentions that the circuit court improperly confirmed the sale of the property and improperly denied his motion to reconsider that decision.

¶ 26    Section 15-1508 of the Foreclosure Law (735 ILCS 5/15-1508 (West 2014)) has been construed as conferring on the circuit courts broad discretion in approving or disapproving judicial foreclosure sales, and consequently, a circuit court's order approving a sale and distribution will not be reversed absent an abuse of discretion. *Household Bank, FSB v. Lewis*, 229 Ill. 2d 173, 178 (2008). The "purpose of a motion to reconsider is to bring to the court's attention newly discovered evidence that was not available at the time of the hearing, changes in the law or errors in the court's previous application of existing law." *Pence v. Northeast Illinois Regional Commuter R.R. Corp.*, 398 Ill. App. 3d 13, 16 (2010). "When reviewing a trial court's denial of a motion to reconsider that was based on new matters, such as additional facts or new arguments or legal theories that were not presented during the course of the proceedings leading to the issuance of the order being challenged, this court employs an abuse of discretion standard. When reviewing a denial of a motion to reconsider based only on the circuit court's application of existing law, the standard is *de novo*." *Muhummad v. Muhummad-Rahmah*, 363 Ill. App. 3d 407, 415 (2006).

¶ 27    With respect to the order confirming the sale and the motion to reconsider that order, Sanders contends on appeal, based upon all the above discussed arguments, that (1) he owned the property "free and clear of the mortgage lien," such that the foreclosure complaint should have been dismissed; (2) the circuit court had no power to order the sale of the entire property, where Lillie could only ever mortgage her partial interest in the property; and (3) at the very least, the circuit court should have recognized Sanders's interest in the property and his right to a lien on any proceeds from the sale. We find that none of these arguments leads us to a conclusion that the circuit court abused its discretion or misapplied existing law in confirming the sale of the property or in denying the motion to reconsider that decision.

¶ 28    Sanders intervened in this matter only after the property had been sold and a motion to confirm that sale had been filed. At that point in the proceedings, the court's discretion to vacate the sale was governed by the mandatory provisions of section 15-1508(b) of the Foreclosure Law. *Lewis*, 229 Ill. 2d at 179. Pursuant to section 15-1508(b), the court *shall* confirm the sale unless the court finds that (1) proper notice of the sale was not given, (2) the terms of the sale were unconscionable, (3) the sale was conducted fraudulently, or (4) justice was otherwise not done. 735 ILCS 5/15-1508(b) (West 2014). It is only the last provision that Sanders contends is at issue here.

¶ 29    As our supreme court has recognized:

        "[O]nce a motion to confirm the sale under section 15-1508(b) has been filed, the court has discretion to see that justice has been done, but the balance of interests has shifted between the parties. At this stage of the proceedings, objections to the confirmation under section 15-1508(b)(iv) cannot be based simply on a meritorious pleading defense to the underlying foreclosure complaint. *** Rather, the justice provision under section 15-1508 (b)(iv) acts as a safety valve to allow the court to vacate the judicial sale and, in rare cases, the underlying judgment, based on traditional equitable principles. ***

        To vacate both the sale and the underlying default judgment of foreclosure, the borrower must not only have a meritorious defense to the underlying judgment, but

- 6 -

must establish under section 15-1508(b)(iv) that justice was not otherwise done because either the lender, through fraud or misrepresentation, prevented the borrower from raising his meritorious defenses to the complaint at an earlier time in the proceedings, or the borrower has equitable defenses that reveal he was otherwise prevented from protecting his property interests. *** This interpretation is consistent with the legislative policy of balancing the competing objectives of efficiency and stability in the sale process and fairness in protecting the borrower's equity in the property and preserving the integrity of the sale." *Wells Fargo Bank, N.A. v. McCluskey*, 2013 IL 115469, ¶¶ 25-26.

Thus, "in the absence of fraud or irregularity, courts [will] not refuse to confirm a judicial sale merely to protect an interested party 'against the result of his own negligence.' " *Id.* ¶ 19 (quoting *Shultz v. Milburn*, 366 Ill. 400, 405 (1937)).

¶ 30    Here, the record reflects that NLS (1) properly served nonrecord claimants such as Sanders by publication; (2) properly recorded a *lis pendens* and notice of foreclosure on May 13, 2015, giving nonrecord claimants, such as Sanders, constructive notice of its claim on the property (see 735 ILCS 5/15-1503(a) (West 2014)); and (3) properly issued a notice of sale on January 14, 2016. In contrast, the record reflects that Sanders—despite purportedly receiving a quitclaim deed for the property in 2013—has never seen to it that that deed was properly recorded and—despite obtaining a copy of the notice of sale on February 20, 2016—failed to seek to intervene in this matter and protect his interest until after the property was sold on February 25, 2016, and after a motion seeking confirmation of that sale was filed on March 25, 2016.

¶ 31    On this record, we fail to see how Sanders has shown that justice was not otherwise done because either the lender, through fraud or misrepresentation, prevented him from raising his meritorious defenses to the complaint at an earlier time in the proceedings, or because he has equitable defenses prevented him from protecting his property interests. *McCluskey*, 2013 IL 115469, ¶ 26. Because any possible "injustice," with respect to Sanders's purported interest in the property, results from Sanders's own negligence, we affirm the circuit court's orders confirming the sale and denying the motion to reconsider that order.

¶ 32                                      III. CONCLUSION

¶ 33    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 34    Affirmed.