2020 IL App (2d) 190249-U
No. 2-19-0249
Order filed August 7, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| ISLAMIC CENTER OF CHICAGO WESTERN SUBURBS, an Illinois NFP, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 17-CH-1267 |
| ALAA FAHMY, TALAL ALMASRI, and IBRAHIM HANNOUN, | ) ) ) | |
| Respondents-Appellants. | ) ) | |
| (Alaa Fahmy, Talal Almasri, and Ibrahim Hannoun, Individually and on behalf of the membership of Islamic Center of Chicago Western Suburbs, Counter Plaintiffs-Appellees v. Yusuf Ruyyashi, Sayyead Abbas, Sadiqa Abbas, and Shahab Qureshi, individually and as agents of Islamic Center of Chicago Western Suburbs, Counter Defendants-Appellants). | ) ) ) ) ) ) ) ) ) ) | Honorable Paul M. Fullerton, Judge, Presiding. |

JUSTICE HUDSON delivered the judgment of the court.
Presiding Justice Birkett and Justice Bridges concurred in the judgment.

**ORDER**

¶ 1   *Held*: (1) The trial court did not err in dismissing plaintiff's verified third-amended complaint; (2) the trial court did not err in appointing a temporary custodian pursuant to section 112.55 of the General Not For Profit Corporation Act of 1986

(805 ILCS 105/112.55 (West 2018)); and (3) the trial court did not err in denying plaintiff leave to file its proposed fourth-amended complaint.

¶ 2                                I. INTRODUCTION

¶ 3     This case centers on a dispute regarding the governance of plaintiff, the Islamic Center of Chicago Western Suburbs (Islamic Center or plaintiff). The Islamic Center appeals from orders of the circuit court of DuPage County: (1) dismissing with prejudice its third-amended complaint, which sought injunctive and other relief against defendants Alaa Fahmy (Fahmy), Talal Almasri (Almasri), and Ibrahim Hannoun (Hannoun); (2) appointing a temporary custodian to restore the leadership of the Islamic Center in accordance with its bylaws; and (3) denying the Islamic Center leave to file a fourth-amended complaint. We affirm.

¶ 4                                II. BACKGROUND

¶ 5     The Islamic Center is a duly registered corporation organized under the General Not For Profit Corporation Act of 1986 (Act) (805 ILCS 105/101.01 *et seq*. (West 2018)) and it operates a mosque in Wheaton. Defendants are members of the Islamic Center. The dispute at issue involves a lawsuit seeking injunctive and other relief related to the purported removal or suspension of Fahmy, Almasri, and Hannoun from various positions at the Islamic Center. The following facts are taken from the allegations in the verified third-amended complaint filed by plaintiff on August 3, 2018, as well as other pleadings, supporting documents, and exhibits in the record.

¶ 6     Early in 2012, a group of individuals met for the purpose of establishing a community center for the benefit of and use by local Arab Muslim families in the western suburbs of Chicago. On January 25, 2013, pursuant to the Act, Hannoun caused to be filed with the Illinois Secretary of State articles of incorporation for the Islamic Center. The articles of incorporation provided that

the initial board of directors of the corporation would consist of three individuals, namely Naim Mansour, Hannoun, and Mohammad Ibrahim.[1]

¶ 7    On February 24, 2013, the Islamic Center adopted bylaws. The bylaws provide for a membership corporation with three categories of membership: Regular Members, Associate Members, and Honorary Members. Each of the three membership categories has certain eligibility requirements. Regular Members in good standing, *i.e.*, those who are current in dues payments and who have not been suspended or expelled, have voting rights.

¶ 8    The bylaws also provide for the establishment of a "General Assembly," an "Interim Board of Directors," and a "Board of Directors." The General Assembly is designated as "the highest authority of *** the Organization" and consists of "all members having voting rights." The bylaws require the General Assembly to hold an annual meeting in January "for the purpose of acting on the President's Annual Report, Financial Report and for the transaction of such other businesses as may properly come before the meeting," including annual elections. The "Interim Board of Directors" consists of "the founding Board Members who attend the Board of Directors meetings during the first foundation year." The Interim Board of Directors is charged with "carry[ing] on the business of the [Islamic Center] until the election of a permanent Board of Directors." The "Board of Directors" consists of "sixteen (16) elected members in addition to the President, the ex-officio, and a designated, nonvoting, Muslim Scholar for a total of nineteen (19) members."

---

[1] The third-amended complaint lists the directors in the articles of incorporation as Mohammad Jarad, Mansour, and Hannoun. However, the copy of the articles of incorporation attached to the third-amended complaint reflects that the initial three directors were Mansour, Hannoun, and Ibrahim.

The Board of Directors "may opt to elect, by simple majority up to Five (5) additional members at large." Subject to the provisions of the bylaws, "the affairs of the Organization shall be managed by its Board of Directors, which will be responsible to the General Assembly." The bylaws also provide for several officer positions (including a president, vice-president, secretary, and treasurer), as well as various committees and committee chairpersons. In addition, the bylaws provide procedures by which to remove board members and officers and to amend the bylaws.

¶ 9     Early in 2013, members of the Islamic Center located a building for sale in Wheaton to house a mosque and began discussions to fund the acquisition of the building. In July 2013, Sayeed and Sadiqa Abbas (collectively, the Abbases) offered an interest-free $1 million loan to the Islamic Center to purchase the Wheaton building. The following month, the Islamic Center's "corporate officers and other members of the group, including the bylaws chairman," attended a meeting with the Abbases to discuss the terms of the loan. One of the conditions the Abbases placed on the loan was that the Islamic Center "would be managed and controlled by a Board of Trustees rather than a general membership entity." Mr. Abbas stated that if the group "did not concede this condition," he would withdraw the loan. In response, "[a]ll of the members of the [Islamic Center] group agreed to the creation of a Board of Trustees to replace the General Assembly membership structure set forth in the original bylaws."

¶ 10    On August 30, 2013, the Islamic Center signed a contract to purchase the Wheaton building for $3 million. The closing on the Wheaton building was scheduled for September 2013. Efforts to secure additional funds to purchase the Wheaton building were unsuccessful. On September 22, 2013, the Abbases verbally pledged an additional $1 million (bringing their total contribution to $2 million) to purchase the Wheaton building. The closing on the Wheaton building occurred on September 25, 2013.

¶ 11    On October 13, 2013, members of the Islamic Center held a Board of Directors' meeting. Among the individuals who attended the meeting were the Abbases, Hannoun, and Almasri. The minutes of the meeting listed the following three agenda items: (1) "[s]electing the Board of Director [*sic*]" of the Islamic Center; (2) "[a]mending the Bylaws;" and (3) discussing "[a]ny other open issues." Following the agenda items, the minutes provided as follows:

> "**2) Board of Directors Introduction:**
>
> 1.    Hannoun gave a background about the original board members who stayed and who dropped off.
>
> 2.    The selection of the interim board members was based on continuous relentless contribution to the effort of bringing about [the Islamic Center] to its current status.
>
> 3.    Self-introduction of attendees."

The minutes then set forth a "List of Board of Directors [*sic*] Names." That list consisted of 17 individuals, including the Abbases, Almasri, Fahmy, Hannoun, Shahab Qureshi, and Yusuf Ruyyashi. The minutes provide that the "Board of Directors was approved by all attending members and agreed to its mandate until January of 2016." A motion was then advanced to create a "Board of Trustees that consists of nine (9) permanent members *** [who] shall be part of the existing sixteen (16) [*sic*] Board of Directors." The motion to create the Board of Trustees "was unanimously approved by all attending Board Members." Among the individuals constituting the Board of Trustees were the Abbases, Almasri, Fahmy, Hannoun, Qureshi, and Ruyyashi. The minutes of the October 13, 2013, meeting also provided that "[i]t was decided that the Board of Trustees will draft the organization's Bylaws."

¶ 12    At a meeting of the Board of Trustees held on November 3, 2015, the attendees discussed a nine-point proposal submitted by Hannoun on October 28, 2015, regarding changes to the leadership structure of the Islamic Center. Points eight and nine of the proposal provided, respectively, that the Board of Trustees "will draft and approve" both "new/amended Bylaws for [the Islamic Center]" and "all processes and procedures that will govern all [Islamic Center] business based on Bylaws and agreed upon mechanism." The Board of Trustees approved Hannoun's proposal but agreed to "[u]se current bylaws ([Islamic Center] bylaws that were used to incorporate with the state of Illinois) and all related Board of Trustees approved amendments to govern all [Islamic Center] businesses until the new bylaws are approved." The minutes of November 3, 2015, further provide that "[t]he term 'General Assembly' will be removed from current bylaws as it does not apply after the 10/13/2013 amendments."

¶ 13    At a meeting of the Board of Trustees on December 10, 2015, Abraham Antar was chosen as president of the Islamic Center and Almasri was chosen to serve as secretary. At an emergency meeting of the Board of Trustees on August 10, 2016, the Board of Trustees voted to remove Antar as president and appoint Qureshi in his stead. At a special meeting of the Board of Trustees on August 14, 2016, Qureshi resigned as president. At that same meeting, the Board of Trustees voted to appoint Fahmy to serve as president of the Islamic Center. In July 2017, Fahmy appointed Hannoun as chairperson of the Islamic Center's Dawas committee.

¶ 14    At a meeting on July 30, 2017, the Board of Trustees voted to remove Almasri as secretary of the Islamic Center and from his position on the Board of Trustees. On August 20, 2017, the Board of Trustees "[c]onfirm[ed]" the removal of Almasri from the Board of Trustees, from his position as secretary of the Islamic Center, and also from the Board of Directors. On or about

September 12, 2017, Fahmy and Almasri caused to be withdrawn approximately $550,000 from the Islamic Center's bank account at Chase Bank.

¶ 15    At a meeting on September 17, 2017, the Board of Trustees voted to remove Fahmy as a trustee, a director, and the president of the Islamic Center. The Board of Trustees elected Mr. Abbas to replace Fahmy. Upon the termination of Fahmy and Almasri from their leadership positions, the Islamic Center, through its agents, demanded the return and surrender of their keys to the organization's premises and notified them that they no longer were authorized to enter non-public areas of the Wheaton building.

¶ 16    At a meeting on November 28, 2017, the Board of Directors "ratifie[d]" the creation of the Board of Trustees "as per the resolution made by a motion and unanimously approved by all attending Board of Director Members on October 13, 2013." The Board of Directors also "ratifie[d] and adopt[ed]":

> "[T]he resolution of the Board of Trustees that the General Assembly be removed from the by-laws per the motion and the unanimous approval on November 3, 2015, at the Board of Trustees' meeting. That it was and is the intent of the Board of Directors that the Board of Trustees replaces and succeeds the General Assembly in the By-Laws and shall exercise all powers and rights for those purposes set forth in the corporate by-laws."

Further, the Board of Directors "ratifie[d] and adopt[ed] the resolution of the Board of Trustees on the board of director's selection mechanism and criteria as an amendment to the [Islamic Center's] by-laws per the motion and unanimous approval on November 20, 2015, at the Board of Trustees' meeting."[2] In addition, the Board of Directors "immediately removed" Almasri as secretary of the

---

[2] The minutes of the November 20, 2015, Board of Trustees' meeting are not attached to

Islamic Center, ratified the Board of Trustees' removal of Almasri as trustee and director of the Islamic Center, and ratified the Board of Trustees' removal of Fahmy as president, trustee, and director of the Islamic Center.

¶ 17    In or about December 2017, Ruyyashi was elected as president of the Islamic Center by the Board of Trustees. On January 5, 2018, Ruyyashi informed Hannoun by letter that, effective January 1, 2018, he had been suspended from "all official duties including the Board of Trustees, Board of Directors, Committees, and any other formal or informal capacity related to the [Islamic Center]."

¶ 18              A. Initial Complaint and Motion for Temporary Restraining Order

¶ 19    On September 15, 2017, the Islamic Center, through four individuals, Ruyyashi, the Abbases, and Qureshi (Individual Plaintiffs), derivatively and in their capacity as trustees, filed in the circuit court of Du Page County a "Verified Complaint for Declaratory Judgment, Breach of Fiduciary Duties, Breach of Duty of Care, Removal of Defendant Trustee Fahmy, Injunctive and Other Relief." The defendants named in the complaint were Fahmy, Almasri, and the Islamic Center.

¶ 20    Also on September 15, 2017, the Islamic Center, through the Individual Plaintiffs, filed a "Verified Motion for Temporary Restraining Order and Preliminary Injunction." The motion alleged that Fahmy and Almasri entered a Chase Bank branch on September 12, 2017, provided false documents, and, without authorization of the Board of Trustees, withdrew nearly $550,000 of the Islamic Center's funds. On September 18, 2017, the trial court granted the motion in part, ordering that the funds and accounts of the Islamic Center be placed with a third-party accountant.

the third-amended complaint.

¶ 21　On October 10, 2017, defendants filed a motion to dismiss the verified complaint pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2016)). The record does not reflect the disposition of the motion to dismiss, but on December 5, 2017, the trial court granted the Islamic Center leave to file an amended complaint.

¶ 22　　B. First-Amended Complaint and Emergency Motion for Injunctive Relief

¶ 23　 On December 14, 2017, plaintiff filed its "First-Amended Complaint for Injunctive and Other Relief."[3] Also on December 14, 2017, plaintiff filed an "Emergency Motion for Injunctive Relief," seeking a temporary restraining order against Fahmy and Almasri. On December 15, 2017, the trial court granted plaintiff's emergency motion for injunctive relief in part, restraining Fahmy and Almasri until further order of the court from, among other things, holding meetings on Islamic Center premises, holding themselves out as board members or trustees of the Islamic Center, and interfering with services and affairs of other members of the Islamic Center.

¶ 24　On January 2, 2018, Fahmy and Almasri filed a motion to dismiss plaintiff's first-amended complaint pursuant to sections 2-615 and 2-619 of the Code (735 ILCS 5/2-615, 2-619 (West 2016)). On January 24, 2018, the trial court granted defendants' motion to dismiss plaintiff's first-amended complaint, but allowed plaintiff leave to file another amended complaint. In addition, the court dissolved the temporary restraining order entered on December 15, 2017. On February 1, 2018, Fahmy and Almasri filed a "Verified Petition for Damages" pursuant to section 11-110 of the Code (735 ILCS 5/11-110 (West 2018)), alleging that the December 15, 2017, temporary restraining order was wrongly entered and damages were appropriate.

---

[3] Beginning with the first-amended complaint, the only named plaintiff is the Islamic Center.

¶ 25                           C. Second-Amended Complaint

¶ 26    On February 28, 2018, the Islamic Center filed a nine-count "Second Amended Complaint for Injunctive and Other Relief." In addition to naming Fahmy and Almasri as defendants, the complaint added Hannoun as a defendant. On July 10, 2018, the trial court entered an order stating that plaintiff's second-amended complaint had been withdrawn without prejudice. By agreement, plaintiff was granted leave to file a third-amended complaint.

¶ 27       D. Defendants' Counterclaim and Motion to Appoint a Temporary Custodian

¶ 28    Meanwhile, on March 16, 2018, Fahmy, Almasri, and Hannoun, individually and on behalf of the membership of the Islamic Center, filed a "Counterclaim for Alternative Remedies Pursuant to 805 ILCS 5/112.55 [*sic*], or in the Alternative, for Judicial Dissolution Pursuant to 805 ILCS 105/112.50." The counterclaim named Ruyyashi, the Abbases, and Qureshi, individually and as agents of the Islamic Center, as counter-defendants. Count I of the counterclaim requested that the trial court appoint "a third-party objective custodian/administrator," namely Dr. Bassam Osman, pursuant to section 112.55 of the Act (805 ILCS 105/112.55 (West 2018)). Further, defendants requested that the administrator, once appointed, be authorized and ordered to reinstate the General Assembly and the voting rights of the Islamic Center's members pursuant to the bylaws, conduct an election by the General Assembly of a new president and new directors, and, once a new Board of Directors is properly elected, supervise the appointment of new officers of the Islamic Center. As alternative grounds for relief, count II requested judicial dissolution of the Islamic Center pursuant to section 112.50 of the Act (805 ILCS 105/112.50 (West 2016)).

¶ 29    On April 5, 2018, defendants filed a "Motion to Appoint a Temporary Custodian." Defendants requested the same relief requested in count I of the counterclaim, namely the

appointment of a temporary custodian to reinstate the General Assembly and to oversee the proper election by the General Assembly of a new president and new directors of the Islamic Center.

¶ 30                    E. Plaintiff's Third-Amended Complaint

¶ 31    On August 3, 2018, plaintiff filed its third-amended complaint for injunctive and other relief, naming as defendants Fahmy, Almasri, and Hannoun. The third-amended complaint consisted of nine counts. Attached to the third-amended complaint were various documents, including the Islamic Center's articles of incorporation, the Islamic Center's bylaws, correspondence between members of the Islamic Center, and the minutes to various meetings.

¶ 32    Counts I, IV, and VIII sought "Injunctive Relief" against Fahmy, Almasri, and Hannoun. For instance in count I, plaintiff alleged that on August 14, 2016, the Board of Trustees appointed Fahmy to serve as president of the Islamic Center for the remainder of his predecessor's (Antar) term of officer, which was to terminate on February 1, 2017. Plaintiff further alleged that on September 17, 2017, the Board of Trustees voted to remove Fahmy as president of the Islamic Center. Despite the expiration of his term as president and his removal by the Board of Trustees, Fahmy refused to relinquish his role and continued to interfere with the Islamic Center's operations. Plaintiff requested that, pending final disposition of this case, Fahmy "be restrained and enjoined from holding himself out as [the Islamic Center] President, interfering with the operations of the [Islamic Center] and its Mosque, entering any area of the Mosque of which he is not given written permission from the Board of Directors, from acting as an agent of [the Islamic Center] to enter into contracts or agreement [*sic*] with third persons or entities, to communicate with third persons as an agent of [the Islamic Center], or otherwise exercising any powers of an officer of [the Islamic Center]," and that, upon final disposition of the case, Fahmy be barred from the same actions and that he also be barred "from entry upon any real properties of [the Islamic

Center] and from the use of any [Islamic Center] personal property." Counts IV and VIII made similar allegations and requested similar relief with respect to Almasri and Hannoun, respectively.

¶ 33    Count II, V, and IX were labeled "Declaratory Judgment." Counts II and V sought declarations that the Board of Trustees was properly created by the Interim Board of Directors and that Fahmy and Almasri, respectively, were properly removed as a member of both the Board of Trustees and the Board of Directors. Count IX sought a declaration that the Board of Trustees was properly created by the Interim Board of Directors and that Hannoun "may be properly removed" as a member of both the Board of Trustees and the Board of Directors.

¶ 34    Count III and VI were labeled "Trespass" and were directed against Fahmy and Almasri, respectively. These counts alleged that upon the termination of Fahmy's and Almasri's positions, the Islamic Center demanded the return and surrender of their keys to the Islamic Center's premises and notified them that they no longer had authorization to enter non-public areas of the mosque. Despite these demands, Fahmy and Almasri trespassed upon the premises of the Islamic Center and interfered with the Islamic Center's use of the premises by, among other things, disturbing mosque services, entering into private areas of the mosque, conducting unauthorized meetings at the mosque, and allowing third parties access to the Islamic Center's premises without approval of the Board of Directors. Pending final disposition of this case, plaintiff requested that Fahmy and Almasri be restrained and enjoined from entering the premises of the Islamic Center for any purpose beyond religious services, that they be restrained from entering any non-public areas of the mosque, and that they be restrained from the use or removal of any property of the Islamic Center's premises. Plaintiff further requested that upon final disposition of this case, Fahmy and Almasri be restrained and enjoined from entry upon any real properties of the Islamic Center.

¶ 35     Count VII alleged conversion against both Fahmy and Almasri. That count alleged that Fahmy and Almasri "withdrew or caused the withdrawal of approximately $550,000 from the [Islamic Center's] bank account at Chase Bank on about September 12, 2017." The count further alleged that said funds were the property of the Islamic Center and neither Fahmy nor Almasri were authorized to withdraw said funds. Plaintiff requested an order requiring the return of the funds to the Islamic Center, a full accounting with regards to all funds withdrawn, the entry of a preliminary injunction enjoining Fahmy and Almasri from transferring, spending, disposing, or dissipating Islamic Center funds, and a judgment against Fahmy and Almasri for any unaccounted monies and any financial damage suffered by the Islamic Center as a result of the withdrawal.

¶ 36          F. Defendants' Motion to Dismiss Plaintiff's Third-Amended Complaint

¶ 37     On August 10, 2018, Defendants filed a combined motion pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2018)) to dismiss plaintiff's complaint with prejudice. Defendants sought dismissal pursuant to section 2-615 of the Code on the basis that plaintiff failed to plead sufficient facts to support any of its alleged causes of action against defendants. Defendants sought dismissal pursuant to section 2-619 of the Code on the basis that plaintiff failed to establish that the Islamic Center's bylaws were ever amended to replace the General Assembly with a Board of Trustees, thereby rendering the purported actions in dismissing defendants from their positions with the Islamic Center as "null and void."

¶ 38     Defendants elaborated that counts I, IV, and VIII should be dismissed because "injunctive relief" is a remedy for an underlying cause of action and is not a cause of action itself. See *Town of Cicero v. Metro Water Reclamation District of Greater Chicago*, 2012 IL App (1st) 112164, ¶ 46. Defendants argued that counts II and V should be dismissed because they are premised on an act taken by the Board of Trustees, but the Board of Trustees is not vested with any authority

under the bylaws and cannot remove or appoint the Islamic Center's officers. Rather, the bylaws vest the General Assembly with the authority to remove a member of the Board of Directors. Similarly, defendants argued that count IX should be dismissed because, among other reasons, it referenced an alleged July 30, 2017, meeting among the four individual plaintiffs who claim to comprise the Board of Trustees, but the Board of Trustees lacked any governance power. Defendants also pointed out that count IX seeks a declaratory judgment that Hannoun was "removed" as trustee and director, but the only allegations in count IX relate to a purported "suspension."

¶ 39    Defendants alleged that the trespass counts against Fahmy and Almasri (counts III and VI, respectively) should be dismissed because Fahmy and Almasri were not properly removed from their leadership positions at the Islamic Center. Without proper removal, Fahmy and Almasri were permitted to enter the Islamic Center property and plaintiff cannot maintain a cause of action for trespass. Defendants also argues that the trespass accounts should be dismissed pursuant to section 2-615 of the Code because the complaint is devoid of any facts to put either Fahmy or Almasri on notice of what actions constitute their alleged trespass. Defendants argued that count VII, which alleged conversion, should be dismissed pursuant to section 2-619(a)(9) of the Code because it is premised on the "removal" of Fahmy and Almasri by the Board of Trustees, but that body has no authority to remove anyone from their leadership positions with the Islamic Center. Defendants also pointed out that on September 18, 2017, the court, with the consent of the parties, appointed a third-party accountant to take possession and control of the funds that form the basis of count VII. Thus, Fahmy and Almasri are no longer in possession or control of the funds at issue.

¶ 40        G. Plaintiff's Response to the Motion to Dismiss and Defendants' Reply

¶ 41    In its response to defendants' motion to dismiss the third-amended complaint, plaintiff argued that the bylaws expressly granted the Interim Board of Directors the power to amend the bylaws and that the Interim Board of Directors exercised that power to create a Board of Trustees to replace the General Assembly. Plaintiff further asserted that it was entitled to the injunctive relief sought as a matter of law because Fahmy and Almasri's terms as president and secretary, respectively, "expired per the Bylaws," but even if their terms had not expired, they were properly removed from these positions by the Board of Trustees. Plaintiff also asserted that: (1) Fahmy and Almasri were properly removed from their positions as trustee and director by the Board of Trustees; (2) Hannoun was not properly appointed as chairman of the Dawas Committee, but even if he had been, his term expired; (3) Hannoun can be removed as a trustee and director; (4) defendants' motion to dismiss counts III and VI is defective and fails to set forth any affirmative matter that refutes the Islamic Center's claims; (5) defendants' motion to dismiss count VII fails to set forth affirmative matter to refute the Islamic Center's allegations that Fahmy and Almasri unlawfully took control and possession of Islamic Center funds; and (7) counts III and VI properly plead a cause of action for trespass.

¶ 42                            H. Trial Court's Ruling

¶ 43    On October 31, 2018, following argument by the parties, the trial court entered an order dismissing with prejudice plaintiff's third-amended complaint. The trial court dismissed counts I, IV, and VIII pursuant to section 2-615 of the Code, concluding that they purport to state causes of action for injunctive relief, but there is no such cause of action. Going beyond that, the court reasoned that counts I, IV, and VIII failed under section 2-619 because the bylaws were not followed, thereby rendering the Board of Directors and the Board of Trustees invalid. The court explained:

"The main document in this case is the bylaws. *** The only bylaws this Court has *** are the bylaws from February 24, 2013.

Now, plaintiff[] argue[s] that in the minutes of October 13th, 2013, those minutes state that the bylaws will be amended. However, that specific—those specific minutes of that meeting state that the board of trustees will draft the bylaws. It wasn't done.

Plaintiff also points out on November 3rd, 2015, the minutes, the board of trustees will draft and improve new amended bylaws for this organization. It wasn't done; and in fact, *** on those November 3rd, 2015 meeting minutes, it specifically says that this mosque will use the current bylaws, [the Islamic Center] bylaws that were used to incorporate with the State of Illinois and all related board of trustees approved amendments to govern all [Islamic Center] business until the new bylaws are approved. So there are no new bylaws, so the Court is left with the bylaws at the time of this corporation's formation, which are the February 2013 bylaws.

The bylaws at issue provide a procedure to amend the bylaws. That's found in Section 7.1.2. Those procedures were not followed. Those procedures made clear that it must be done by the general assembly. It wasn't done. That much is admitted.

Further, these bylaws have no clear procedure to elect a board of directors *** but based on a number of provisions in these bylaws about elections and that the general assembly has the highest authority of the organization and that there are annual elections and annual meetings, the Court believes that the general assembly is the entity that would elect the board of directors. That was never done.

There is a procedure in these bylaws *** for an interim board, and that's found on [*sic*] 7.2.1, which states that the interim board of directors shall consist of the founding board members who attended the board of directors' meeting during the first foundation year; and then that interim board of directors will carry on the business until the election of a permanent board of directors, but as noted, there was no election by the general assembly of a permanent board of directors and there doesn't appear to be any annual meetings or any election on an annual basis anywhere.

The plaintiffs [*sic*] own allegations show that the decision to amend the bylaws by the interim board of directors, which board is not authorized by the bylaws, there was no involvement of the general assembly as required by 7.1.2. As such, this mosque has never really operated in compliance with the bylaws. The creation of the board of trustees was not valid. The creation of the board of directors was not valid, and that board of directors actually created the board of trustees. Those are all invalid under the bylaws.

This started out—as I already noted, and as set forth in the bylaws, the entire congregation membership is the highest authorities. The bylaws gave the general assembly the power to vote on pertinent corporate matters and it wasn't done."

The court found that the allegations in counts II, III, V, VI, and IX "are all actions related to improper governance under the bylaws and those would all fall" pursuant to section 2-619 of the Code. Finally, the court concluded that count VII, which alleged conversion, was moot because the court previously appointed an accountant to hold the disputed funds. The court stated that its dismissal was with prejudice because "the allegations, even assuming those allegations as true,

taken in the light most favorable to the plaintiff, they directly conflict with the actual bylaws that govern this organization, and the Court doesn't believe a cause of action could be stated."

¶ 44                                    I. Appointment of Temporary Custodian

¶ 45    Also on October 31, 2018, the trial court appointed a custodian to run the Islamic Center. The court ordered the parties to jointly consult on the custodian to be appointed but stated that if no agreement was reached within two weeks, the court would select the custodian to be appointed. The parties were unable to agree upon a custodian, so, on November 14, 2018, the court appointed Dr. Bassam Osman to the position. The order of November 14, 2018, dissolved the Islamic Center's Board of Directors (whether initial, interim, or permanent), dissolved the Islamic Center's Board of Trustees, terminated any past or current officers of the Islamic Center, and terminated any committee chairpersons. The order also vested Osman, as temporary custodian, with certain duties, responsibilities, and authority, including: (1) establishing the membership of the Islamic Center; (2) re-establishing the General Assembly; (3) convening an election by the General Assembly of the Board of Directors; (4) convening an election by the General Assembly for the president of the Islamic Center; and (5) convening a meeting of the newly elected Board of Directors and president within seven days of the elections described above. Subsequently, the trial court granted Osman's motions for leave to retain legal counsel.

¶ 46    J. Plaintiff's Motion for Leave to File Answer to Defendants' Counterclaim

¶ 47    On November 30, 2018, plaintiff filed a motion for leave to file an answer to defendants' counterclaim. Plaintiff alleged that it was not ordered to file its answer to the counterclaim and that granting the motion would not cause undue delay or prejudice to the parties. Defendant responded that the motion was moot because the court already granted the relief requested in the counterclaim. The trial court granted plaintiff's motion for leave to file an answer on December 5,

2018, but stated that it would not change anything it had done. Plaintiff filed its answer to the counterclaim on December 7, 2018.

¶ 48                           K. Plaintiff's Motion for Reconsideration

¶ 49    On January 14, 2019, plaintiff filed a "Motion for Reconsideration, or in the Alternative for Leave to File an Amended Complaint, or in the Alternative for a Supreme Court Rule 304(a) Finding." Plaintiff argued that the trial court erred in dismissing its complaint and in appointing a temporary custodian. In the alternative, plaintiff requested leave to file a fourth-amended complaint or entry of a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. March 8, 2016). A copy of the proposed verified fourth-amended complaint was attached to the motion.

¶ 50             L. Custodian's Motion to Discharge and for Attorney Fees

¶ 51    On January 28, 2019, Osman filed a report, describing how he performed the duties and responsibilities required of him in the November 14, 2018, order. That same day, Osman also filed a motion to discharge him as temporary custodian of the Islamic Center. On January 29, 2019, Osman filed a motion for attorney fees incurred by him in discharging his duties and responsibilities as custodian for the Islamic Center. On February 5, 2019, the trial court approved the custodian's final report, granted Osman's motion for discharge, and granted his motion for attorney fees.

¶ 52           M. Denial of Motion for Reconsideration and Notice of Appeal

¶ 53    On March 28, 2019, the trial court entered an order denying plaintiff's motion for reconsideration, or in the alternative leave to file an amended complaint, or in the alternative for a finding pursuant to Illinois Supreme Court Rule 304(a). In the same order, the court noted that defendants had withdrawn without prejudice, their verified petition for damages filed on February

1, 2018. The order further states that it is final and appealable. On March 29, 2019, plaintiff filed a notice of appeal.

¶ 54                                III.  ANALYSIS

¶ 55    On appeal, plaintiff argues that the trial court erred in (1) dismissing its third-amended complaint; (2) granting defendants' motion to appoint a temporary custodian pursuant to section 112.55(a) of the Act (805 ILCS 5/112.55(a) (West 2018)); and (3) denying it leave to file a fourth-amended complaint. We address each contention in turn.

¶ 56                    A. Dismissal of Third-Amended Complaint

¶ 57    As its first assignment of error, plaintiff contends that the trial court erred in dismissing its third-amended complaint.

¶ 58    Defendants moved to dismiss plaintiff's third-amended complaint pursuant to sections 2-615 and 2-619 of the Code (735 ILCS 5/2-615, 2-619 (West 2018)). Section 2-619.1 of the Code provides that motions with respect to pleadings pursuant to sections 2-615 and 2-619 may be filed together as a single motion. 735 ILCS 5/2-619.1 (West 2018)); *Edelman, Combs & Latturner v. Hinshaw & Culbertson*, 338 Ill. App. 3d 156, 164 (2003). A section 2-615 motion to dismiss challenges the legal sufficiency of a complaint based on defects apparent on its face. 735 ILCS 5/2-615 (West 2018); *Collins v. Bartlett Park Dist.*, 2013 IL App (2d) 130006, ¶ 26. When reviewing a decision to grant a motion pursuant to section 2-615, the relevant inquiry is whether the allegations of the complaint are sufficient to establish a cause of action upon which relief may be granted. *Malinski v. Grayslake Community High School District 127*, 2014 IL App (2d) 130685, ¶ 6. Thus, a cause of action should not be dismissed under section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery. *Collins*, 2013 IL App (2d) 130006, ¶ 26. In contrast, a motion to dismiss based on section 2-619 of the Code admits the

legal sufficiency of the complaint but raises defects, defenses, or other affirmative matter, appearing on the face of the complaint or established by external submissions, that defeats the claim. *Orlak v. Loyola University Health System*, 228 Ill. 2d 1, 6-7 (2007); *Jaros v. Village of Downers Grove*, 2020 IL App (2d) 180654, ¶ 35; *Malinski*, 2014 IL App (2d) 130685, ¶ 6. In considering a combined motion to dismiss pursuant to section 2-619.1, we accept all well-pleaded facts in the complaint as true, drawing all reasonable inferences from these facts in favor of the nonmoving party. *Malinski*, 2014 IL App (2d) 130685, ¶ 6. Our review under either section 2-615 or 2-619 of the Code is *de novo*, and we can affirm on any basis present in the record. *Hadley v. Doe*, 2015 IL 118000, ¶ 29; *Orlak*, 228 Ill. 2d at 7; *Malinski*, 2014 IL App (2d) 130685, ¶ 6.

¶ 59    Plaintiff's third-amended complaint consisted of nine counts. The court dismissed as moot count VII of the third-amended complaint, which alleged conversion, because the court had previously appointed an accountant to hold the disputed funds. Plaintiff does not expressly challenge this finding on appeal. Accordingly, plaintiff has forfeited any argument concerning the propriety of the dismissal of count VII. Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) ("Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing."); *Phillips v. DePaul University*, 2014 IL App (1st) 122817, ¶ 1, n.1 (concluding that party waived challenge to dismissal of counts in complaint for which they made no argument on appeal); *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 55 (noting that where an appeal is from the dismissal of multiple counts of a complaint but the appellant only argues certain counts in its brief on appeal, the remaining counts are deemed forfeited under Illinois Supreme Court Rule 341(h)(7)); *Karimi v. 401 North Wabash Venture, LLC*, 2011 IL App (1st) 102670, ¶ 1, n.1 (holding that party's failure to address basis for dismissal of particular count waived claim on appeal that dismissal was improper); *Fleissner v. Fitzgerald*, 403 Ill. App. 3d

355, 359 (2010) (holding that party's failure to address why trial court erred in dismissing certain counts resulted in forfeiture of any such claim on appeal). We therefore affirm the trial court's dismissal with prejudice of count VII of plaintiff's third-amended complaint.

¶ 60 Counts I, IV, and VIII were labeled "Injunctive Relief." Pursuant to these counts, plaintiff requested that defendants "be restrained and enjoined" from, among other things, holding themselves out as having leadership positions at the Islamic Center, interfering with the operations of the Islamic Center and its mosque, entering into certain areas of the mosque, and acting as an agent of the Islamic Center. The trial court dismissed these counts pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2018)) on the basis that "injunctive relief" is a remedy, not a stand-alone cause of action. See *Town of Cicero v. Metropolitan Water Reclamation District of Greater Chicago*, 2012 IL App (1st) 112164, ¶¶ 46-47. Additionally, the court found dismissal of counts I, IV, and VIII appropriate on the basis that plaintiff did not comply with the Islamic Center's bylaws, thereby tacitly dismissing the counts pursuant to pursuant to section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2018)). In other words, the trial court dismissed counts I, IV, and VIII on two independent grounds. On appeal, plaintiff does not challenge the trial court's dismissal of these three counts under section 2-615. Accordingly, plaintiff has also forfeited any argument concerning the propriety of the dismissal of counts I, IV, and VIII. Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018); *Phillips*, 2014 IL App (1st) 122817, ¶ 1, n1; *Reynolds*, 2013 IL App (4th) 120139, ¶ 55; *Fleissner*, 403 Ill. App. 3d at 359. We therefore affirm the trial court's dismissal with prejudice of counts I, IV, and VIII of plaintiff's third-amended complaint.

¶ 61 The trial court dismissed counts II, III, V, VI, and IX pursuant to section 2-619(a)(9) of the Code (735 ILCS 5/2-619(a)(9) (West 2018)), concluding that those counts "related to improper governance under the bylaws." Plaintiff disputes the trial court's ruling. According to plaintiff, the

bylaws "empowered" the Interim Board of Directors to manage the affairs of the Islamic Center and amend the bylaws and the Interim Board of Directors exercised this authority to "waive[], abrogate[], or amend[] the Islamic Center's Bylaws to excise the concept of a General Assembly and establish the Board of Trustees."

¶ 62     Counts II, V, and IX of plaintiff's third-amended complaint sought declaratory relief. In particular, counts II and V sought a declaration that the Board of Trustees was properly created by the Interim Board of Directors and that the Board of Trustees properly removed Fahmy and Almasri from their positions as members of the Board of Directors and the Board of Trustees. Count IX sought a declaration that the Board of Trustees was properly created by the Interim Board of Directors and that the Board of Trustees has the power to remove Hannoun from his positions as a member of the Board of Directors and the Board of Trustees. Counts III and VI alleged trespass against Fahmy and Almasri, respectively, alleging that upon the "termination" of Fahmy's and Almasri's leadership positions at the Islamic Center, they no longer had the authority to enter upon the Islamic Center's premises for any purposes beyond religious services. Removal of members from leadership positions at the Islamic Center is governed by the organization's bylaws. The only set of written bylaws are those approved on February 24, 2013. It is undisputed that those bylaws do not provide for the establishment of a Board of Trustees. Thus, the only way that the Board of Trustees could validly remove defendants from their leadership positions would be if the bylaws were properly amended to create a board of trustees and grant that body the authority to take such action.

¶ 63     Regarding the creation of the Board of Trustees, the third-amended complaint alleged as follows:

"32. On or about October 13, 2013, the [Islamic Center] conducted a Board of Directors meeting wherein an Interim Board of Directors, as set forth in the bylaws, was unanimously elected by all of the [Islamic Center] group, including the remaining two initial Board of Directors listed on the Articles of Incorporation. A copy of the October 13, 2013 [Islamic Center] Board of Director's meeting is attached hereto as Exhibit N and incorporated by reference.

33. The [Islamic Center] bylaws specifically provide for an Interim Board of Directors and empower the Interim Board of Directors to amend the bylaws. See Section 7.2 [Islamic Center] bylaws attached as Exhibit H.

34. Further, Section 7.12 of the [Islamic Center] bylaws expressly authorize the Board of Directors to elect directors to fill any vacancies on the Board of Directors. See Section 7.12 [Islamic Center] bylaws attached as Exhibit H.

35. Section 7.2.3 provides that the Board of Directors shall consist of sixteen (16) elected members, in addition to the President, the ex-officio, and a designated, nonvoting, Muslim Scholar for a total of nineteen (19) members. Pursuant to the authority granted the Board of Directors in Section 7.12, the vacancies were filled.

36. The *** Interim Board of Directors was composed of *all* of the individuals that had participated or contributed in the formation and creation of the [Islamic Center], including the acquisition of the [Islamic Center] Mosque, who expressed a desire to serve on the [Islamic Center] Board of Directors.

37. On October 13, 2013, after the election of the Interim Board of Directors to fill the vacancies, the new Interim Board of Directors created a Board of Trustees in furtherance to satisfy [*sic*] the condition agreed to for the Two Million Dollar ($2,000,000)

loan from Dr. and Mr. Abbas. See Exhibit N. The vote to create the Board of Trustees was unanimously approved by all of the Interim Board Members present at the Board Meeting. See Exhibit N." (Emphasis in original.)

Based on these allegations, plaintiff asserts that at the meeting on October 13, 2013, seventeen individuals were "elected" to the Interim Board of Directors, pursuant to section 7.12 of the bylaws, to fill vacancies on the "pre-existent Interim Board." Thereafter, the newly constituted Interim Board of Directors, pursuant to section 19.1.1, amended the bylaws to create the Board of Trustees. Defendants dispute that the Interim Board of Directors was established at the October 13, 2013, meeting. Rather, defendants assert that the "permanent" Board of Directors was elected at that meeting and that any attempt to amend the bylaws to create a board of trustees at that meeting was invalid due to the lack of compliance with the process to amend the bylaws by the permanent Board of Directors.

¶ 64 To address plaintiff's argument, we examine the language of the Islamic Center's bylaws, specifically those provisions related to the amendment of the bylaws. Although three provisions of the bylaws reference their amendment, plaintiff focuses on only one of those provisions, section 19.1.1. That section provides that "The Interim Board of Directors, consisting of the founding members as provisioned in section 7.2.1, shall have the rights to adopt new Bylaws or amend Bylaws approved on the day of FEBRUARY 24, 2013 by the voting of 'Two Third [*sic*]' of the members of the Interim Board of Directors." In turn, section 7.2.1 provides that that the Interim Board of Directors "shall consist of the founding Board Members who attended the Board of Directors meetings during the first foundation year." Bylaws are interpreted according to principles of contract interpretation. *Stobe v. 842-848 W. Bradley Place Condominium Ass'n*, 2016 IL App (1st) 141427, ¶ 13. The primary goal when interpreting a contract is to give effect to the parties'

intent as ascertained from the plain language of the document. *Trapani Construction Co. v. The Elliot Group, Inc.*, 2016 IL App (1st) 143734, ¶ 48. Based on these rules of construction, the bylaws clearly provide for the establishment of an Interim Board of Directors and grant the Interim Board of Directors the authority to amend the bylaws. Of course, plaintiff's argument that the Islamic Center's bylaws were properly amended at the October 13, 2013, meeting to create the Board of Trustees presupposes that the Interim Board of Directors was properly constituted. But, the trial court concluded that the Interim Board of Directors was "not authorized by the bylaws." Accepting all well-pleaded facts in the complaint as true and drawing all reasonable inferences from these facts in favor of plaintiff, we conclude that the trial court properly dismissed plaintiff's third-amended complaint because the Interim Board of Directors was not validly constituted under the bylaws.

¶ 65    Plaintiff contends that at the meeting on October 13, 2013, seventeen individuals were "elected" to the Interim Board of Directors, pursuant to section 7.12 of the bylaws, to fill vacancies on the "pre-existent Interim Board." But this is inconsistent with the agenda of the October 13, 2013, meeting, which specifies that it was a meeting of the Board of Directors to "[s]elect[] the Board of Director [*sic*] of [the Islamic Center]," not to *elect* the *Interim* Board of Directors or to fill any vacancies on that body. Regardless, the bylaws do not provide for the *election* of the Interim Board of Directors. Rather, as noted above, section 7.2.1 provides that the Interim Board of Directors "shall consist of the founding Board Members who attended the Board of Directors meetings during the first foundation year." Thus, pursuant to the plain language of the bylaws, the Interim Board of Directors is composed of a predetermined group of individuals based on attendance of meetings during a specified period of time. As such, the "election" of people at the October 13, 2013, meeting is inconsequential and unauthorized unless those people were alleged

to fit the bylaws' requirements for eligibility for the Interim Board of Directors. Plaintiffs do not so allege. To the contrary, the third-amended complaint expressly states that the Interim Board of Directors "was composed of *all* of the individuals that had participated or contributed in the formation and creation of the [Islamic Center], including the acquisition of the [Wheaton building], who expressed a desire to serve on the [Islamic Center] Board of Directors." (Emphasis in original.) Plaintiff does not explain how this allegation is consistent with the composition of the Interim Board of Directors as set forth in section 7.2.1 of the bylaws.

¶ 66    In addition, the vacancy provision of the bylaws, found in section 7.12 does not apply to the Interim Board of Directors. Section 7.12 of the bylaws provides in relevant part that "[a]ny vacancy occurring in the Board of Directors shall be filled by the Board of Directors." Yet, the bylaws clearly distinguish between the "Interim Board of Directors" and the "Board of Directors." For instance, section 7.1.2 of the bylaws defines the structure of the "Interim Board of Directors" while section 7.1.3 defines the structure of the "Board of Directors." Similarly, section 19.1.1 of the bylaws sets forth the process by which the "Interim Board of Directors" may amend the bylaws while section 19.1.2 sets forth a process for the amendment of the bylaws involving the "Board of Directors." Section 7.12 references only the "Board of Directors." It does not mention the Interim Board of Directors. Thus, the plain language of section 7.12 makes clear that it applies only to vacancies on the Board of Directors. Even ignoring the distinctions in the bylaws between the Board of Directors and the Interim Board of Directors, section 7.12 could not apply to the Interim Board of Directors for a more fundamental reason. As noted above, section 7.2.1 defines the Interim Board of Directors as "the founding Board Members who attended the Board of Directors meetings during the first foundation year." The bylaws do not define the terms "founding Board Member" or "first foundation year." But if, as plaintiff contends, the Board of Directors was "pre-

existent," *i.e.*, it was in place before the October 13, 2013, meeting, there would be no individuals with whom to fill any vacancies because all of "the founding Board Members who attended the Board of Directors meetings during the first foundation year" would already be on the Interim Board of Directors.

¶ 67     Given this record, plaintiff has not adequately alleged facts in its third-amended complaint and attached exhibits thereto which, when taken as true, support the proposition that the body that voted to create the Board of Trustees at the October 13, 2013, meeting was validly constituted. As such, plaintiff cannot establish that a validly constituted Interim Board of Directors amended the bylaws pursuant to section 19.1.1 to create the Board of Trustees. Thus, dismissal of the third-amended complaint was proper.

¶ 68     Despite the foregoing, plaintiff insists that, "at the very least," the body of verified allegations and meeting minutes in the record "create a reasonable inference that the Interim Board of Directors intended to waive, abrogate, or amend the Bylaws to excise the concept of a General Assembly and establish the Board of Trustees." As noted above, the Interim Board of Directors could not have validly amended the bylaws because it was not properly constituted at the time it allegedly took that action. For this same reason, the Interim Board of Directors could not waive or abrogate the bylaws. Moreover, plaintiff's argument that the Interim Board of Directors waived or abrogated the bylaws was raised for the first time in plaintiff's motion for reconsideration before the trial court and therefore is not properly before us. *Holzer v. Motorola Lighting, Inc.*, 295 Ill. App. 3d 963, 978 (1998) (noting that a party may not raise a legal theory for the first time in a motion to reconsider or on appeal).

¶ 69     Plaintiff also contends that the trial court erred in dismissing its third-amended complaint because even if the Board of Trustees was not validly established, then the power to remove

defendants from their leadership positions remained with the Interim Board of Directors and the Interim Board of Directors "ratified and adopted" the Board of Trustees' actions at a meeting of that body on November 28, 2017. However, the Interim Board of Directors could not have validly ratified and adopted the Board of Trustees' actions because the Interim Board of Directors was not properly constituted at the time it allegedly took that action. Moreover, the third-amended complaint does not allege that the *Interim* Board of Directors took any action on November 28, 2017, but rather that the "Board of Directors" ratified and adopted the actions of the Board of Trustees. Indeed, plaintiff's argument that the Interim Board of Directors ratified and adopted the actions of the Board of Trustees on November 28, 2017, was raised for the first time in plaintiff's motion for reconsideration before the trial court and therefore is not properly before us. See *Holzer*, 295 Ill. App. 3d at 978 (1998) (noting that a party may not raise a legal theory for the first time in a motion to reconsider or on appeal).

¶ 70     For the foregoing reasons, we conclude that the trial court properly dismissed plaintiff's third-amended complaint.

¶ 71                        B. Appointment of a Temporary Custodian

¶ 72     Plaintiff next argues that the trial court erred in appointing a temporary custodian pursuant to section 112.55 of the Act (805 ILCS 105/112.55 (West 2018)) and in denying its reconsideration motion regarding the same. Plaintiff raises both procedural and substantive arguments in support of its claim.

¶ 73     In its opening brief, plaintiff initially invokes procedural grounds to attack the trial court's decision to appoint a temporary custodian. Specifically, citing section 2-605(a) of the Code, plaintiff argues that defendants' counterclaim must be disregarded because plaintiff's body of complaints were verified, but defendants' counterclaim was not, and the lack of verification was

not excused by the trial court. 735 ILCS 5/2-605(a) (West 2018) ("If any pleading is so verified, every subsequent pleading must also be verified, unless verification is excused by the court."); see also *Marren Builders, Inc. v. Lampert*, 307 Ill. App. 3d 937, 942 (1999) ("When a subsequent pleading is not verified, the court must regard the unverified pleading as if it was never filed."). Defendants respond that plaintiff waived this argument on various grounds, including by affirmative representation to the trial court that it was not going to raise the lack of verification "as an issue." In its reply brief, plaintiff "withdraws its objection" under section 2-605(a) of the Code, conceding that it declined to raise the lack of verification of defendants' counterclaim as a procedural issue in the trial court. Given plaintiff's concession, we do not consider this argument.

¶ 74    Substantively, plaintiff argues that defendants failed to satisfy the evidentiary burden to warrant the appointment of a temporary custodian pursuant to section 112.55 of the Act. Initially, the parties dispute the standard of review applicable to the trial court's appointment of a custodian. Plaintiff argues that defendants' pleadings for the appointment of a temporary custodian were "in effect" requests for summary judgment and therefore subject to *de novo* review. *Murphy-Hylton v. Lieberman Management Services, Inc.*, 2016 IL 120394, ¶ 16; see also 735 ILCS 5/2-1005(a) (West 2018) (providing that a party "may move with or without supporting affidavits for summary judgment in his or her favor for all or any part of the relief sought"). Noting that neither party filed a motion for summary judgment and the trial court did not convert any pending pleading to a motion for summary judgment, defendants respond that an abuse-of-discretion standard applies because the trial court fashioned a remedy in equity to fix the governance issues plaguing the Islamic Center. *Hurst v. Papierz*, 16 Ill. App. 3d 574, 581-82 (1973); *Best v. Best*, 358 Ill. App. 3d 1046, 1052-54 (2005) (noting that an abuse of discretion standard applies when the trial court "fashion[s] remedies in equity"); see also *Leib v. Toulin, Inc.*, 113 Ill. App. 3d 707, 718 (1983)

("[T]he appointment of a receiver resides in the arsenal of equitable remedies to be used when in the sound discretion of the chancellor it is needed to insure complete justice is done between the parties"). Based on the language of section 112.55, which expressly grants the trial court discretion to appoint a custodian, we agree that an abuse-of-discretion standard of review applies. 805 ILCS 105/112.55(c) (West 2018) ("A custodian may be appointed *in the discretion of the court* if it appears that such action by the court will remedy the grounds alleged" by the complaining party (emphasis added)); see also *Abreu v. Unica Industrial Sales, Inc.*, 224 Ill. App. 3d 439, 443 (1991) (holding that trial court "properly exercised discretion" in appointing a provisional director to a corporation under statute that then contained language almost identical to section 112.55(c) of the Act). An abuse of discretion occurs where the trial court's decision is arbitrary, fanciful, or unreasonable, or where no reasonable person would agree with the position taken by the trial court.[4] *Control Solutions, LLC v. Elecsys*, 2014 IL App (2d) 120251, ¶ 38.

¶ 75   Section 112.55 of the Act provides in relevant part as follows:

> "(a) In either an action for dissolution pursuant to Section 112.50 of this Act or in an action which alleges the grounds for dissolution set forth in Section 112.50 of this Act but which does not seek dissolution, the Circuit Court, in lieu of dismissing the action or ordering dissolution, may retain jurisdiction and:
>
> \*\*\*
>
> (2) Appoint a custodian.
>
> \*\*\*

---

[4] While we determine that abuse of discretion is the appropriate standard of review, the conclusion we reach below would have been the same had we reviewed the issue *de novo*.

(c) A custodian may be appointed in the discretion of the court if it appears that

such action by the court will remedy the grounds alleged by the complaining director or

member entitled to vote to support the jurisdiction of the court under Section 112.50 of this

Act." 805 ILCS 105/112.55 (West 2018).

In turn, section 112.50 lists the following four situations as grounds for judicial dissolution "[i]n an action by a member entitled to vote, or a director:" (1) the directors are deadlocked in the management of the corporate affairs, the members are unable to break the deadlock, and irreparable injury to the corporation is thereby caused or threatened; (2) the directors have acted, are acting, or will act in a manner that is illegal, oppressive, or fraudulent; (3) the corporate assets are being misapplied or wasted; or (4) the corporation is unable to carry out its purposes. 805 ILCS 105/112.50 (West 2018). As one court has noted, the appointment of a custodian as a remedy " 'in times of corporate strife *** help[s] guide the company through crisis toward the goal of stabilization and prosperity.' " *Muhammad v. Muhammad-Rahmah*, 363 Ill. App. 3d 407, 417 (2006) (quoting *Abreu*, 224 Ill. App. 3d at 443). In appointing a custodian, the court considers " 'only the best interests of the corporation, and not of any warring factions.' " *Muhammad*, 363 Ill. App. 3d at 417 (quoting *Abreu*, 224 Ill. App. 3d at 443).

¶ 76     In this case, the trial court did not abuse its discretion in appointing a temporary custodian pursuant to section 112.55 of the Act. Defendants filed two pleadings requesting the appointment of a temporary custodian—a counterclaim and a motion to appoint a temporary custodian. Both count I of the counterclaim and the motion alleged grounds for dissolution under section 112.50 of the Act. In their counterclaim, defendants requested the appointment of a custodian, alleging there are "significant and ongoing disputes among the officers, directors and trustees of the [Islamic Center] that are jeopardizing [the Islamic Center's] ability to carry out its mission for the

benefit of its members." The counterclaim further alleged that the Islamic Center's "current purported leadership" has "failed to comply with the [Islamic Center's] Bylaws," "unilaterally terminated the voting rights of [the Islamic Center's] membership," and "installed their hand-picked friends and family as the purported 'Board of Directors.' " Defendants stated that through their counterclaim they "hope to save [the Islamic Center] and strengthen its ability to serve its membership and the community." Similarly, in its motion to appoint a temporary custodian, defendants alleged that the Islamic Center "has failed to comply with its own Bylaws," its "membership [has been] excluded from exercising their voting rights," there is "a continuing dispute over who are the properly authorized officers, directors, and committee chairpersons," and the Islamic Center's governance "is in complete disarray, with opposing factions each claiming they are the properly authorized leadership of [the Islamic Center]." Defendants feared that in the absence of court intervention, the Islamic Center's governance problems "will result in [the] failure to serve [the Islamic Center's] membership and the community."

¶ 77     Importantly, in its body of pleadings, plaintiff did not dispute defendants' characterizations of the Islamic Center's governance, albeit it disagreed with the source of those problems. For instance, in its memorandum in opposition to the motion to appoint a temporary custodian, plaintiff described the Islamic Center as consisting of "two warring factions" and agreed that the governance of the Islamic Center "is currently in disarray."[5] Moreover, in its verified motion for a temporary restraining order, plaintiff alleged that "corporate strife has pushed the governance of

---

[5] Although filed after the trial court entered the order appointing a temporary custodian, plaintiff also acknowledged in its answer to defendants' counterclaim that "there is a significant and ongoing dispute among the officers, directors, and trustees of [the Islamic Center]."

[the Islamic Center] into crisis due to the repeated unlawful actions of *** Fahmy and *** Almasri." The motion also alleged that Fahmy and Almasri "have grossly abused their positions to the detriment of the organization," "have hijacked the organization by acting in an unofficial capacity," and "have begun to operate the organization as dictators committing *ultra vires* acts without the consent of the duly appointed Board of Trustees." Similarly, in its memorandum in support of its second motion for a temporary restraining order, plaintiff alleged that "the existence of [the Islamic Center's] business and mission are threatened" by the conflict among the Islamic Center's leaders and that there is "on going [*sic*] dissension amongst the Mosque's patrons" resulting in "confus[ion] as to who is running the [Islamic Center] and who has the power and authority to make decisions regarding daily business activities and Mosque religious services." In its body of verified complaints, plaintiff alleged that former directors and officers acted improperly in governance actions and with corporate assets and that the strife engulfing the Islamic Center is "jeopardizing the relationships between the Mosque and its patrons" and "interfer[ing] with the affairs and operations of [the Islamic Center's] events and business." Judicial admissions contained in verified pleadings "ha[ve] the effect of withdrawing those facts from issue and dispense[] wholly with the need of their proof." See *Baker-Wendell, Inc. v. Edward M. Cohon & Associates, Ltd.*, 100 Ill. App. 3d 924, 928 (1981). Given this record, there is a clear and unambiguous record of sworn allegations that, at a minimum, support dissolution under the first and fourth grounds set forth in Section 112.50(b), *i.e.*, there was an unbreakable deadlock in the management of the Islamic Center's affairs and that the Islamic Center was unable to carry out its purposes.

¶ 78    Moreover, the trial court could reasonably conclude that the appointment of a custodian would remedy the grounds alleged by the complaining party and serve the best interests of the Islamic Center. During the course of proceedings in this case, the court remarked that "every time

this case comes before this Court, there seems to be a large crowd which means that there is a large group of people that are invested and care about this religious organization." The court also commented, "I always have a courtroom full of people in this case, because I'm assuming everybody is from the mosque and everybody has an interest and everybody cares about it, and this court has acknowledged in the past that the mosque runs fairly well when those in power agree on governance." The court's observations underscored the importance of the Islamic Center to the community it serves and the likelihood that its absence would constitute a detriment to the congregation as a whole. See *Muhammad*, 363 Ill. App. 3d at 419 (finding the appointment of a custodian preferable over dissolution where the parties "have made it apparent that this Corporation still serves a vital interest in the community" and "its compulsory absence would only be a detriment to the congregation it currently serves"). Accordingly, we cannot say that the trial court's decision is arbitrary, fanciful, or unreasonable, or that no reasonable person would agree with the position taken by the trial court. Quite simply, the trial court's appointment of a temporary custodian was made in the best interests of the Islamic Center in an effort to remedy corporate strife and guide the organization through crisis toward the goal of stabilization and prosperity. Therefore, the trial court did not abuse its discretion in appointing a temporary custodian in this case.

¶ 79　Plaintiff argues, however, that the record lacks evidence establishing that any defendant was "a member entitled to vote, or a director" of the Islamic Center, as is required to maintain a claim under section 112.50(b) of the Act (805 ILCS 105/112.50(b) (West 2018)). This argument is forfeited because plaintiff failed to raise it in the trial court. See *Stevens v. McGuireWoods LLP*, 2015 IL 118652, ¶ 22 (noting that lack of standing is an affirmative defense that is forfeited if not raised); *Mortgage Electronic Registration Systems, Inc. v. Barnes*, 406 Ill. App. 3d 1, 6 (2010)

(same); *Holzer*, 295 Ill. App. 3d at 978 (noting that a party may not raise a legal theory for the first time in a motion to reconsider or on appeal); see also *Lyons v. Ryan*, 324 Ill. App. 3d 1094, 1101 n.5 (2001) (noting that certain jurisdictional issues can be waived, and "[s]tanding is one such issue"). Even absent forfeiture, plaintiff's argument fails because it misconstrues the plain language of section 112.55 of the Act. Plaintiff incorrectly suggests that a custodian can be appointed to manage the affairs of a corporation only in an action for judicial dissolution brought by a "member entitled to vote, or a director," as set forth in section 112.50(b) of the Act (805 ILCS 105/112.50(b) (West 2018)). While that is one situation in which the appointment of a custodian is permitted, it is not the only one contemplated by section 112.55(a) of the Act (805 ILCS 105/112.55(a) (West 2018)). Notably, section 112.55(a) grants the trial court discretion to appoint a custodian in *any* action in which the facts demonstrate that dissolution is an appropriate remedy. 805 ILCS 105/112.55(a) (West 2018) (providing that the appointment of a custodian in *either* "an action for dissolution pursuant to Section 112.50 of the Act" *or* "an action which alleges the grounds for dissolution set forth in section 112.50 of this Act but which does not seek dissolution"). Plaintiff's standing argument therefore fails.

¶ 80    Plaintiff also argues that "[t]he law required the Trial Court to hold a trial or evidentiary hearing" prior to appointing a temporary custodian pursuant to section 112.55 of the Act (805 ILCS 105/112.55 (West 2018)). In support of this claim, plaintiff points out that section 112.60(a) of the Act provides that "[t]he practice in actions for judicial dissolution or removal shall be the same as in other civil actions except as may be otherwise provided in this Act." 805 ILCS 105/112.60(a) (West 2018). Citing two provisions of the Code and one case, plaintiff then notes that the Code "generally provides for the resolution of matters by evidentiary hearings or trials."

A review of the statutory provisions and case law cited by plaintiff demonstrate that they do not apply to the circumstances present here.

¶ 81    First, plaintiff directs us to section 1103(b) of the Code (735 ILCS 5/2-1103(b) (West 2018)) for the proposition that matters should generally be resolved by trial or evidentiary hearing. However, section 1103(b) governs affidavits and provides:

> "(b) If evidence is necessary concerning any fact which according to law and the practice of the court may now be supplied by affidavit, *the court may, in its discretion, require the evidence to be presented, wholly or in part, by oral examination of the witnesses in open court upon notice to all parties not in default, or their attorneys.* If the evidence is presented by oral examination, an adverse party shall have the right to cross-examination. This Section does not apply to applications for change of venue on grounds of prejudice."
> (Emphasis added.) 735 ILCS 5/1103(b) (West 2018).

The statute is clear that the taking of evidence in open court is entirely within the discretion of the trial court, and not required by statute as plaintiff contends.

¶ 82    Second, plaintiff cites to section 1101 of the Code (735 ILCS 5/2-1101 (West 2018)). That provision governs subpoenas and the proper procedures for compelling testimony of non-party witnesses. Plaintiff does not explain how this provision compels a hearing prior to appointing a temporary custodian pursuant to section 112.55, and it is not apparent to us.

¶ 83    Plaintiff also cites to *Lichtenstein v. Anvan Co.*, 62 Ill. App. 3d 91, 96 (1978), in support of its claim that the law required the trial court to hold a trial or evidentiary hearing prior to appointing a temporary custodian pursuant to section 112.55 of the Act. In *Lichtenstein*, the plaintiffs, former partners, sued the partnership for an accounting. Pursuant to a consent decree, the partnership tendered an audit prepared by its accounting firm, which computed the value of the

plaintiffs' partnership interests in accordance with the terms of a partnership agreement. The plaintiffs filed objections to the audit, contesting the interpretation of several terms used in the partnership agreement. Plaintiffs then hired their own accounting firm to conduct a second audit. The parties subsequently participated in a pretrial conference at which the trial court formulated its own accounting based upon a combination of both audits and ruled that a hearing at which both sides could produce evidence of in support of their accountings was not necessary. The appellate court reversed, holding that questions of fact existed as to the definitions of several material terms in the partnership agreement and that the circuit court therefore erred in refusing to grant an evidentiary hearing as to which accounting was proper. *Lichtenstein*, 62 Ill. App. 3d at 96. Plaintiff's reliance on *Lichtenstein* is misplaced because that case did not involve the appointment of a custodian under section 112.55 of the Act. Moreover, unlike in *Lichtenstein*, plaintiff points to no ambiguity that would support an evidentiary hearing. Indeed, as discussed above, the parties did not dispute that the governance of the Islamic Center was in disarray.

¶ 84    In short, the record overwhelmingly supports the trial court's decision to appoint a temporary custodian in this case. Accordingly, we affirm this portion of the trial court's ruling.

¶ 85                              C. Fourth-Amended Complaint

¶ 86    Plaintiff's final assignment of error is that the trial court erred in refusing to grant it leave to file a fourth-amended complaint. We disagree.

¶ 87    When a plaintiff seeks leave to amend a complaint before the entry of final judgment, leave should be liberally granted. 735 ILCS 5/2-616(a) (West 2018) ("At any time before final judgment amendments may be allowed on just and reasonable terms"); *Tomm's Redemption, Inc. v. Hamer*, 2014 IL App (1st) 131005, ¶ 13. When making a determination on a pre-judgment request for leave to amend, a trial court considers the following four factors: (1) whether the proposed

amendment would cure the defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the pleading could be identified. *Loyola Academy v. S & S Roof Maintenance, Inc.*, 146 Ill. App. 3d 263, 273 (1992). After the entry of a final judgment, however, "a plaintiff has no statutory right to amend a complaint and a court commits no error by denying a motion for leave to amend." *Tomm's Redemption, Inc.*, 2014 IL App (1st) 131005, ¶ 14. The only exception to this rule is for amendments "to conform the pleadings to the proofs." 735 ILCS 5/2-616(c) (West 2018); *Fultz v. Haugan*, 49 Ill. 2d 131, 136 (1971); *Pickle v. Curns*, 106 Ill. App. 3d 734, 740 (1982). "A complaint cannot be amended after final judgment in order to add new claims and theories or to correct other deficiencies." *Tomm's Redemption, Inc.*, 2014 IL App (1st) 131005, ¶ 14. We review a trial court's ruling whether to allow leave to amend a complaint for an abuse of discretion. *Scheffler v. Commonwealth Edison Co.*, 2011 IL 110166, ¶ 69. An abuse of discretion occurs where the trial court's decision is arbitrary, fanciful, or unreasonable, or where no reasonable person would agree with the position taken by the trial court. *Control Solutions, LLC*, 2014 IL App (2d) 120251, ¶ 38.

¶ 88    The parties analyze this issue as if plaintiff's request for leave to amend its complaint was a pre-judgment request. However, the trial court dismissed plaintiff's third-amended complaint with prejudice. The dismissal of a complaint with prejudice constitutes a final judgment. *A & R Janitorial v. Pepper Construction Co.*, 2018 IL 123220, ¶ 17; *FHP Tectonics Corp v. American Home Assurance Co.*, 2016 IL App (1st) 130291, ¶ 37; *Hachem v. Chicago Title Insurance Co.*, 2015 IL App (1st) 143188, ¶ 18. Moreover, there is no indication in the record that plaintiff sought leave to file a fourth-amended complaint before the trial court entered the order dismissing its third-amended complaint with prejudice. In this regard, the record established that defendants, in

their motion to dismiss, requested that plaintiff's third-amended complaint be dismissed with prejudice. In its response, plaintiff did not ask the court to make any dismissal without prejudice or to allow it to file a fourth-amended complaint. In addition, although defendants reiterated their request that the third-amended complaint be dismissed with prejudice at the hearing on the motion, plaintiff did not ask the court to make any dismissal without prejudice and allow it to file a fourth-amended complaint. Indeed, it was not until January 14, 2019, more than two months after the trial court dismissed its third-amended complaint, that plaintiff first sought leave to file a fourth-amended complaint. See *Fultz*, 49 Ill. 2d at 136-37 (holding that amendment of complaint which sought to add new parties and new causes of action was not proper after entry of final judgment); *FHP Tectonics Corp.*, 2016 IL App (1st) 130291, ¶ 37 (holding that where the plaintiff first sought to amend its complaint upon filing a motion to reconsider, after final judgment was entered, the court did not err in denying the request to amend the complaint); *Tomm's Redemption, Inc.*, 2014 IL App (1st) 131005, ¶ 15 (holding that where the trial court dismissed the complaint with prejudice and the plaintiff did not seek leave to amend until briefing on its motion to reconsider, the plaintiff had no statutory authority to amend the complaint); *Ketcham v. Consolidated Rail Corp.*, 146 Ill. App. 3d 196, 202-03 (1986) (holding that the dismissal of amended complaint without leave to refile was a final judgment notwithstanding timely filed motion for reconsideration and therefore the trial court did not err in denying motion for leave to file another amended complaint); *Pickle v. Curns*, 106 Ill. App. 3d 734, 740 (1982) (holding that a dismissal of a complaint with prejudice constitutes a final judgment and the trial court is without authority to allow an amendment following such a dismissal unless there is a need to conform the pleading to the proofs). Because plaintiff had no right to amend its complaint after the entry of final

judgment, the trial court did not abuse its discretion in denying plaintiff's request for leave to amend.

¶ 89    In so holding, we recognize that several matters remained pending in the trial court at the time plaintiff filed its request for leave to file its fourth-amended complaint, including defendants' verified petition for damages. While this may have affected the appealability of the case, a judgment does not have to be appealable to be final for the purpose of prohibiting amendments under section 2-616 of the Code. *People v. Cross*, 144 Ill. App. 3d 409, 411 (holding that for purposes of section 2-616 of the Code, a judgment need not be appealable to be final).

¶ 90    Even if we analyze plaintiff's request for leave to file a fourth-amended complaint pursuant to *Loyola Academy*, we would affirm the trial court's decision to deny leave to amend. Regarding the first factor, plaintiff argues that its proposed fourth-amended complaint "clarified its legal theories and added additional supporting facts to address the issues raised by the Court at the October 31, 2018 hearing." However, the amendment does not cure or clarify the defective pleading, it confuses it more. For example, the fourth-amended complaint notes that the Interim Board of Directors is required by the bylaws to consist of "the founding Board Members who attended the Board of Directors meetings during the first foundation year." The complaint then alleges that the identities of the founding board members who attended the board of directors' meetings during the first foundation year are listed in the minutes of a meeting held on January 26, 2013. Yet, later in the proposed fourth-amended complaint, plaintiff alleges that "[b]y October 6, 2013, the Interim Board of Directors was comprised of the following eighteen Directors," a list that includes individuals who are not listed in the January 26, 2013, meeting minutes. By the plain language of the bylaws, and taking as true the allegation in plaintiff's proposed fourth-amended complaint, those individuals cannot be members of the Interim Board of Directors because they

did not "attend the Board of Directors Meetings during the first foundation year" and were not present at the January 26, 2013, meeting. Moreover, plaintiff does not explain the process by which the composition of the Interim Board of Directors was changed on October 6, 2013, or how it was proper under the bylaws. Where a proposed amendment does not satisfy the first *Loyola Academy* factor, we need not consider other factors. *Hayes Mechanical, Inc. v. First Industries, L.P.*, 351 Ill. App. 3d 1, 7 (2004). In light of the foregoing, we cannot say that the trial court abused its discretion in denying plaintiff leave to file a fourth-amended complaint.

¶ 91                               III. CONCLUSION

¶ 92      For the reasons set forth above, we affirm the judgment of the circuit court of Du Page County.

¶ 93      Affirmed.